[Civ. No. 20742. First Dist., Div. Three. Sept. 17, 1963.]

GIBBONS & REED COMPANY et al., Plaintiffs and Respondents, v. DEPARTMENT OF MOTOR VEHICLES et al., Defendants and Appellants.

Stanley Mosk, Attorney General, Harry W. Low and John J. Klee, Jr., Deputy Attorneys General, for Defendants and Appellants.

Johnson & Stanton, Gardiner Johnson and Marshall A. Staunton for Plaintiffs and Respondents.

DEVINE, J.—The Department of Motor Vehicles, certain public officers, and the State of California itself appeal from a judgment directing a writ of mandate to compel refund to respondents of registration fees, license fees, and penalties which respondents had paid, under protest and threat of seizure, upon certain vehicles, and to compel payment of interest on the moneys ordered refunded. The questions are: (1) Were the vehicles subject to the fees required of owners of vehicles driven upon a highway in the years 1955-1958? (2) If the answer to (1) is in the negative, is interest allowable on the claimed refunds?

A. THE SUBJECT OF EXEMPTION OF THE VEHICLES

1. *Description of the vehicles and of their use*

The vehicles involved are owned by three contractors: Gibbons & Reed Company, John Delphia, and Guy F. Atkinson Company. The two first named owned vehicles described in the manufacturers' brochure as Euclid rear dumps, and the third named contractor owned Euclid tractors and bottom dump trailers. The rear dumps are mammoth vehicles weighing 22 tons, unladen, which are meant for carrying rock; when loaded, they weigh about 90,000 pounds. They are loaded by shovels and are unloaded by a tilting device. Atkinson Company's equipment likewise is enormous, and consists of tractors attached by draw bars to huge dump vehicles which are unloaded from the bottom. These are meant chiefly for the carrying of earth other than rock. All of the vehicles have certain common features. The case as presented by the contractors, through testimony of the contractors themselves, testimony of the Euclid dealer for all of California, and certain exhibits (chiefly brochures) is this: (1) The vehicles are described in the advertising brochures as being designed for mines, quarries, and the construction of highways, and with regard to the latter they are referred to as ''off-highway'' equipment. It was testified

that this equipment is never used on the highways for the transportation of persons or property, with the exception of work in the immediate area of construction. (2) It was testified that the term used to describe the subject material in the industry is "self-propelled earth moving equipment," and that they are more specifically referred to as "rear dumps" or "bellies" or "Eucs" or "pay-loaders," but that they are never referred to as trucks. (3) They do not have lights except as an extra item, and when these are ordered it is usually because of jobs working night shifts. (4) In order to move these vehicles on a highway, even unladen, a special permit from the Department of Public Works is required (Veh. Code, § 35780 et seq.), and some of the units are so large that they must be hauled on trailers in order to distribute the load properly. When the Department of Motor Vehicles sequestered some of the units for non-payment of the fees and they were to be moved to a warehouse, the Department of Motor Vehicles itself had to get a permit from the Department of Public Works for the passage of the units on the highway. (5) There was testimony that the Division of Highways referred to the equipment as earthmovers. (6) The units are not sold by the truck division of General Motors, the manufacturer of Euclids, but by its Euclid Division, and dump trucks are handled by a different dealer. Sellers of this equipment are not licensed as motor vehicle dealers. (7) In the contract of the State of California for the construction of a highway in Mariposa County, on which the Delphia equipment was used, the contractor was required to pay higher wages to the operators of these units, which were classified as "rubber-tired heavy-duty equipment," than was required to be paid to truck drivers. The classification calling for higher wages for this type of equipment was general throughout the industry.

Against the above items of evidence offered by respondents, appellants offer the following: (1) The vehicles actually did carry materials which they unloaded by dumping either at the rear by tilting of the body, or at the bottom by opening of the belly; wherefore, reason appellants, they are dump trucks. (2) The vehicles look like any dump truck, although they are extremely large. (3) Against the testimony offered by respondents that the vehicles are never referred to as trucks, appellants introduced (a) leases of Gibbons & Reed of certain of these vehicles, in which they were called "dump

trucks," and (b) in the claim made to the Department of Motor Vehicles for refund, Gibbons & Reed again referred to the vehicles as "dump trucks."

The use of the vehicles was this: The Atkinson vehicles, after they were brought into California on flatbed railroad cars, were driven, unladen and under special permit, a distance of about 7 miles along the highway to the Coyote Dam. Thereafter, they were used exclusively in work at the damsite and were never operated on any highway. The Gibbons & Reed vehicles were used on highway construction projects at Dunsmuir and Floristan, and the Delphia equipment on a highway construction job near Mariposa. The vehicles did not carry material along the highway except within the area of construction. The highways remained open to the public in a limited way, that is, with the use of flagmen, and both contractors were required by their contracts with the state to keep the highways reasonably open.

2. *The statutes*

Section 4000 of the Vehicle Code (during the time relevant to this case the section was 140 of the Vehicle Code, but it contained substantially the material which follows) provides: "No person shall drive, move, or leave standing any motor vehicle, trailer, semitrailer, pole or pipe dolly, or auxiliary dolly upon a highway unless it is registered and the appropriate fees have been paid under this code." There was, however, an exemption for special highway and construction equipment by the terms of section 142, subdivision (f), and special highway construction equipment was defined by section 39.5 as follows: " 'Special highway construction equipment' means a vehicle which is designed and used primarily for grading of highways, paving of highways, earth moving and other construction work on highways and which is not designed or used primarily for the transportation of persons or property and which is only incidentally operated or moved over the highway. It includes road construction and maintenance machinery such as portable air compressors, air drills, asphalt spreaders, bituminous mixers, bucket loaders, caterpillar tractors, ditchers, leveling graders, finishing machines, motor graders, paving mixers, road rollers, scarifiers, earth moving scrapers and carryalls, lighting plants, welders, pumps, power shovels and drag lines, self-propelled earth moving equipment and machinery and other similar types of construction equipment. This enumeration shall not

operate to exclude other vehicles which are within the purview of the term 'special highway construction equipment' as above defined. 'Special highway construction equipment' does not include any of the following: (a) A vehicle originally designed for the transportation of persons or property to which machinery has been attached; (b) Dump trucks and truck mounted transit mixers, cranes and shovels." (Stats. 1947, ch. 697, pp. 1731-1732.) No demand was made upon any of the respondents for fees on the equipment which is the subject of this litigation until 1957; however, a witness for the Department of Motor Vehicles testified that this was simply because of lack of a sufficient number of supervisors, and that the department at all times regarded the equipment as liable for fees; and since the trial court made no finding that the administrative practice was to regard the equipment as exempt, we pass over any suggestion that the department itself at one time had a view contrary to the one expressed in this litigation. When demand was made, respondents insisted, as they have done ever since and do on this appeal, that the equipment was exempt as "self-propelled earth moving equipment" under the terms of section 39.5, but the Department of Motor Vehicles contended that the equipment consists of "dump trucks" and therefore is not exempt because of the provision of subdivision (b) of that section. It is agreed by all parties to this appeal that what followed was this: The contractors who were operating heavy equipment of the type under discussion proposed to the Legislature that the statute be amended. The Legislature at its First Extraordinary Session in 1958 amended section 39.5 to make the exemption, as far as is relevant to this case, read as follows: ". . . self-propelled and tractor-drawn earth moving equipment and machinery, including dump trucks and tractor-dump trailer combinations which either (1) are in excess of 96 inches in width or (2) which, because of their length, height or unladen weight, may not be moved on a public highway without the permit specified in section 710 of this code and which are not operated laden except within the boundaries of the job construction site, and other similar types of construction equipment. This enumeration shall not operate to exclude other vehicles which are within the purview of the term 'special highway construction equipment' as above defined. 'Special highway construction equipment' does not include any of the following: . . . (b) Dump trucks

originally designed to comply with the size and weight provisions of this code notwithstanding any subsequent modifications which would require a permit, as specified in section 710 of this code, to operate such vehicles on a highway, truck-mounted transit mixers, cranes and shovels.'' The Legislature included in the section (1) a declaratory provision, and (2) a statement of urgency. The first of these reads as follows: ''The amendment of this section made by the 1958 First Extraordinary Session of the Legislature does not constitute a change in, but is declaratory of, the pre-existing law.'' The second provision reads as follows: ''This act is an urgency measure necessary for the immediate preservation of the public peace, health or safety within the meaning of article IV of the Constitution and shall go into immediate effect. The facts constituting such necessity are: An uncertainty exists as to what equipment may be designated as having the status of special highway construction equipment. This uncertainty has caused a hardship on the owners of such equipment and has subjected them to fines and penalties as well as substantially hindering the progress of construction work on the highways of this State. For the benefit of all concerned, it is necessary that this uncertainty be removed without delay.'' (Stats. 1959, First Ex. Sess. 1958, ch. 34, pp. 228-229.) ■ Thus, to put it in the most general way, in 1958 the statute made a distinction between ''large'' and ''small'' dump trucks, the former being exempt from and the latter subject to license fees. (The contents of section 39.5, as amended in 1958, are now found in sections 565 and 570 of the Vehicle Code, although the statement of urgency was not carried into the new sections of the code when they were set up in the extensive code revision in 1959.) The problem relating to exemption that is presented on this appeal, therefore, will not arise again and it is limited to the years 1955-1958.

In 1959 the Legislature made a limitation upon the meaning of the words ''street'' and ''highway'' by the terms of section 591 of the Vehicle Code, which provides: ''A 'street' or 'highway' shall not include those portions of a way or place in or upon which construction, alteration, or repair work is being performed insofar as the equipment performing such work and its operation are concerned. Where the work consists of a street or highway project, the limits of the project as shown or described in the plans or specifi-

cations of the awarding body shall be so excluded with reference to the equipment actually engaged in performing the work.'' The general definition of a highway as contained in former section 81 of the Vehicle Code was ''a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel'' (Stats. 1937, ch. 282, p. 617), and this definition has been carried into section 590 of the Vehicle Code, although it is now limited by section 591.

### 3. *Findings of fact and conclusions of law*

The essential findings of the court are that the vehicles involved were designed for use in off-highway rock and earth moving construction work; that the vehicles involved herein as a matter of fact are not dump trucks; that the vehicles involved herein were used on the road being constructed or repaired at the same time members of the general public were permitted to drive through the project; and that the vehicles involved herein were not used on the public highways while engaged in rock and earth moving on the construction work. The essential conclusions of law are that the vehicles are special highway construction equipment as defined in section 39.5 of the Vehicle Code; and that it is the duty of appellants to pay interest from the dates of payment of the fees.

### 4. *Decision and reasons for it on exemption of vehicles*

Preliminarily, we take note of the contention of appellants that what is given as a finding of fact by the trial judge, that the vehicles are not dump trucks, should be regarded as a conclusion of law, and that therefore this court should not apply the substantial evidence rule. In this, we believe appellants are correct. The decision of the trial court that these are not dump trucks is on a par with the decision that they are earthmoving equipment (the latter was contained in the conclusions of law), because both are described in the statute, the earthmoving equipment as being exempt and dump trucks as being excluded from the exemption. ■ Besides, when there is a question of interpreting a statute, all of the facts being agreed upon, the appellate court has before it a question of law only. (*Peterson Tractor Co.* v. *State Board of Equalization*, 199 Cal.App.2d 662, 668 [18 Cal.Rptr. 800]; *Pacific Pipeline Constr. Co.* v. *State Board of Equalization*, 49 Cal.2d 729, 736 [321 P.2d 729]; *McNeil* v. *Board of Retirement*, 51 Cal.2d 278, 284-285 [332 P.2d 281]; *Bank of America* v. *State Board of Equalization*, 209 Cal.App.2d 780, 793

[26 Cal.Rptr. 348]; *Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 381 [267 P.2d 257]; *County of Monterey* v. *Madolora,* 171 Cal.App.2d 840 [341 P.2d 333].) In all of the testimony there was almost no conflict, the only semblance of disagreement being on the subject of what the equipment was called in the industry, as to which appellants made reference to the leases and the claim for refund, as stated above. We think it fair to infer a finding by the court that, in general at least, the equipment is not referred to as "trucks" in the industry. Thus, in deliberating on the cause, we shall consider the principal question as being one of law.

█ A prime principle of statutory construction is that the purpose sought to be achieved has an important place in ascertaining the legislative intent. (*Freedland* v. *Greco,* 45 Cal.2d 462, 467 [289 P.2d 463].) █ If a statute is not plain, certain and unambiguous, a mere literal construction ought not to prevail as against the intention of the Legislature, apparent by the act itself. The intent prevails over the letter and the letter will, if possible, be so read as to conform to the spirit of the act. (*Pritchard* v. *Sully-Miller Contracting* Co., 178 Cal.App.2d 246, 256 [2 Cal.Rptr. 830]; *Select Base Materials* v. *Board of Equalization,* 51 Cal.2d 640, 645 [335 P.2d 672].) █ Motor vehicle license fees are charged for the privilege of using the highways of the state, in order to secure a fair return for such use. (*Yosemite Park & Curry Co.* v. *Department of Motor Vehicles,* 177 Cal.App.2d 448, 457 [2 Cal.Rptr. 431]; *Ingels* v. *Riley,* 5 Cal.2d 154 [53 P.2d 939, 103 A.L.R. 1].) It is reasonable to make an equation, as the trial court did, between payment of the fees and use of the highways.

Appellants take the position that the statute is unambiguous in its reference to "dump trucks" but we do not find it so, considering the mention in the exception from registration of "self-propelled earth moving equipment." The Legislature did not define "dump trucks" and we do not feel compelled to say that any vehicle which, having carried its cargo, discharges it by tilting of the bin or opening of its "belly," is a dump truck, any more than we feel compelled by the terms of the statute itself to find such vehicles to be self-propelled earthmoving equipment. The Legislature has given definitions to some vehicles, which the layman might think at first glance did not need definition, such as motorcycle (Veh. Code, § 400), muffler (Veh. Code, § 425), trailer (Veh. Code, § 630), axle (Veh. Code, § 230];

and has given definitions to others not so commonly known, such as gantry truck (Veh. Code, § 335), carry-all (Veh. Code, § 245), auxiliary dolly (Veh. Code, § 225); and then it has left others without definition, such as road rollers, scarifiers, and dump trucks. We believe that the Legislature, in section 39.5, meant to give as the overriding test the general definition of special highway and construction equipment in the first sentence of section 39.5, namely, ''a vehicle which is designed and used primarily for grading of highways, paving of highways, earth moving and other construction work on highways and which is not designed or used primarily for the transportation of persons or property and which is only incidentally operated or moved over the highway''; that the equipment in this case was designed and used primarily for construction and not for transportation, and was only incidentally moved over the highway, as appears in the findings of the trial court.

The reasoning we have given in the paragraphs above is fortified by action of the Legislature in 1958. Appellants argue that the amendment to section 39.5 made a substantial change in the law rather than a clarification, and that when the Legislature in effect divided dump trucks into two classes, it recognized by implication that all of the vehicles, large or small, always were dump trucks. We do not accept this reasoning because of the declarations of the Legislature, referred to in the next paragraph, and because the amended statute still refers to earthmoving equipment, although including dump trucks therein. The Legislature could have stated that certain vehicles, describing their size and use, are to be considered dump trucks and that others are not; instead, it chose to leave the term ''dump trucks'' still undefined and to take size and use as the test of taxability.

The statement in the 1958 amendment that it does not constitute a change in, but is declaratory of, a preexisting law, is not binding on the courts. (*Stockton Sav. & Loan Bank* v. *Massanet,* 18 Cal.2d 200 [114 P.2d 592]; *People* v. *Grazer,* 138 Cal.App.2d 274, 279 [291 P.2d 957]; *Levine* v. *State Board of Equalization,* 142 Cal.App.2d 760, 765 [299 P.2d 738].) If, however, the prior statute is ambiguous, a subsequent expression of the Legislature as to the intent of the prior statute, although not binding on the courts, may properly be used in determining the effect of the prior act. (*California Emp. etc. Com.* v. *Payne,* 31 Cal.2d

210, 214 [187 P.2d 702]; *Board of Social Welfare* v. *County of Los Angeles,* 27 Cal.2d 90, 97 [162 P.2d 635]; *Stockton Sav. & Loan Bank* v. *Massanet, supra,* p. 204.)

 We conclude that the vehicles were special highway construction equipment and exempt from registration fees.

B. The Subject of Interest

The trial court in its direction that a peremptory writ of mandate be issued, commanded the officers of the state to refund the amounts of the fees and penalties, together with interest from the dates of payment. Appellants contend that there is no authority in the law for payment of interest. The liability of the state to pay interest is purely statutory. (*People* v. *Union Oil Co.,* 48 Cal.2d 476, 480 [310 P.2d 409]; *Blum* v. *City & County of San Francisco,* 200 Cal.App.2d 639, 643 [19 Cal.Rptr. 574].)

Section 42231 of the Vehicle Code provides for refund of any *fee* or *penalty* which is excessive, erroneous, or not legally due, but which was collected by the Department of Motor Vehicles. Section 42233 describes the manner of making the refund and, again, refers to any *fee* or *penalty.* It will be observed that these sections make no reference to interest. These statutes are in contrast with provisions of other statutes which specifically refer to interest on refunds, such as the personal income tax law (Rev. & Tax. Code, § 19062), the sales and use tax law (Rev. & Tax. Code, § 6907), the motor vehicle fuel license tax law (Rev. & Tax. Code, § 8130), and the motor vehicle transportation license tax law (Rev. & Tax. Code, § 10281). Moreover, it is to be noted that in the taxes referred to in the last sentence the state has made provision for collection of interest on delinquent payments by taxpayers, but in the case of motor vehicle registration fees there is no such provision. It seems, therefore, that the omission of provision for interest on refunds was by no means accidental; but in any event the Vehicle Code sections simply do not provide for interest on refunds on the fees and penalties involved in this case.

 It is argued by respondents that although the Vehicle Code sections in themselves do not provide for interest, section 42233 is to be taken in combination with section 652 of the Government Code, and that the concurrence of the two justifies the award of interest. The argument runs like this. Subdivision (c) of section 42233 of the Vehicle Code provides as follows: ''This section is an appropriation of any and all amounts necessary to refund and

repay any excessive or erroneous fees and penalties collected under this code, and the procedure prescribed in this article for refunds shall be deemed a compliance with the requirements of the Government Code relating to the refund of excessive or erroneous fees or penalties." Government Code section 652, which is contained in article 4 of that code, dealing with actions against the state, reads: "If judgment is rendered for the plaintiff it shall be for the legal amount actually found due from the State to the plaintiff, with legal interest from the time the claim or obligation first arose or accrued, and without costs." Therefore, argue respondents, interest is properly awarded on the "claim" mentioned in section 652 from the time it arose or accrued. We do not accept this reasoning, because: (1) Article 4 of the Government Code clearly appears, by reading its entire context, to apply to the type of claims against the state designated in section 641 thereof, namely, on express contract, for negligence, or on inverse condemnation. (2) Article 4 provides for actions at law against the state, requires claims to be presented to the Board of Control, and does not allow costs (Gov. Code, § 652). (3) Respondents did not file an action at law but petitioned for a writ of mandate, in which they alleged that they have no plain, speedy and adequate remedy at law; they presented no claim to the State Board of Control; and they sought and obtained costs which could not be had in an action against the state. The reference in section 42233 of the Vehicle Code to the requirements of the Government Code relating to refund of excessive or erroneous fees or penalties, is to procedural matters of the internal accounting to be done by the state and the designation of the funds in the state treasury, for example, sections 12440 and 13144 of the Government Code.

 Civil Code section 3287 is also unavailing, although as recently amended it includes the State as a debtor against whom interest may be awarded on a judgment for damages which are certain, because, as stated above, under the specific statute allowing refunds of vehicle fees, section 42231 of the Vehicle Code does not provide for interest, and specifies a particular fund from which refunds of fees and penalties are to be made; and because recovery of interest is improper in a special proceeding to compel the performance of a duty especially enjoined by law and to compel payment from a specified fund. (*Sheehan* v. *Board of Police Comrs.*, 188 Cal.

525, 533 [206 P. 70]; *Benson* v. *City of Los Angeles*, 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649].)

An incidental part of this case, which is not set forth as an issue because it was virtually agreed upon at oral argument, is that travel allowance for a witness produced by respondents, who had come a distance greater than the court could have required him to travel, is not properly allowable under the rule of *Del Mar Canning Co.* v. *Pacific Gas & Elec. Co.*, 44 Cal.App.2d 718 [112 P.2d 953].

Judgment directing issue of writ of mandate affirmed, but modified to strike therefrom the provision for interest. Costs in the trial court are reduced by the amount of $226.80. Each party to bear own costs on appeal.

Draper, P. J., and Salsman, J., concurred.

The following addendum to the opinion was filed on October 11, 1963:

THE COURT.—Since our opinion was filed, respondents have asked the Court to state specifically whether the striking of interest applies to prejudgment interest only, or to post judgment interest also. The subject of post judgment interest was not particularly covered in the briefs, and respondents believe it is not disposed of in the opinion, and they have submitted, as have appellants, further argument. Respondents' claims to post judgment interest, and our decision on each, are as follows:

1. That article XIII, section 15, of the California Constitution provides that after payment of any tax collected under that article, action may be maintained to recover, with interest, taxes claimed to have been illegally collected. Motor vehicle fees are not collected under article XIII (*Ingels* v. *Riley*, 5 Cal.2d 154 [53 P.2d 939, 103 A.L.R. 1]). It does not apply.

2. That under section 1095 of the Code of Civil Procedure, where judgment for writ of mandate is granted, applicant may recover the damages he has sustained, and, say respondents, damages include interest. If this broad statement were true, interest would be allowable in every case in which damages are awarded. *Benson* v. *City of Los Angeles*, 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649], is cited by respondents, but this was not a mandamus proceeding but an action for damages for breach of contract (p. 365). There is no contract by the state to refund taxes, whether

collected illegally or not. (*Southern Service Co., Ltd.* v. *County of Los Angeles*, 15 Cal.2d 1, 11 [97 P.2d 963].)

3. That by section 1033 of the Code of Civil Procedure, the clerk or judge must include interest on a verdict or decision. This was not a money judgment in an action, but a writ in a special proceeding, and it does not bear interest. (*Nilsson* v. *State Personnel Board*, 36 Cal.App.2d 186 [97 P.2d 843].)

No award of interest, before or after judgment, is allowed.