[Civ. No. 9042. Fourth Dist., Div. Two. Sept. 29, 1969.]

MATTHEW B. SHOBAN et al., Plaintiffs and Respondents, v. BOARD OF TRUSTEES OF DESERT CENTER UNIFIED SCHOOL DISTRICT et al., Defendants and Appellants.

Ray T. Sullivan, Jr., County Counsel, James H. Angell, Assistant County Counsel, W. W. Miller, James H. Harmon and Peter H. Lyons, Deputy County Counsel, for Defendants and Appellants.

Ronald G. Skipper, Johnson & Stanton and Thomas E. Stanton, Jr., for Plaintiffs and Respondents.

TAMURA, J. — Plaintiffs are probationary teachers employed by defendant Desert Center Unified School District (District). They were first employed in June 1965 for the school year 1965-66 and were classified for salary purposes on the basis of their training, experience and number of postgraduate units they had earned. They were re-employed for the ensuing school year 1966-67. Shortly after commencement of the school year 1966-67, the District determined that plaintiffs had been erroneously classified by being credited with more units of postgraduate studies than they were entitled to under the District regulation. The Board of Trustees ordered plaintiffs reclassified into lower salary classifications and withheld from their salaries alleged overpayments for the period during which they were allegedly improperly classified.

Plaintiffs thereupon instituted separate mandate actions to compel the District to restore them to their original classifications and to repay them the sums withheld from their salaries. The District answered and cross-complained for declaratory relief praying that the court declare that the District had properly reclassified plaintiffs and was entitled to recoup the alleged overpayment. The cases were consolidated and tried by the court on a written stipulation of facts and supplemental documentary and testimonial evidence. The court found for plaintiffs, entered judgment for the relief they sought, and dismissed the District's cross-complaint. The District appeals from the judgment.

The facts may be summarized as follows:

Prior to accepting employment with defendant District, plaintiffs had been teaching in Colorado. In June 1965 they were interviewed for employment with defendant District by Dr. Hawkins, district superintendent. The District salary schedule took into account the number of postgraduate units held by each teacher. It was, in part, as follows:

538

| Classification | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| Requirements | BA | BA+ 15 | BA+ 30 | BA+ 45 or MA | MA+ 15 | MA+ 30 |

(BA and MA refer to bachelor's and master's degrees and the numbers refer to postgraduate units of college work.)

At the time Miss Lambach was employed she submitted proof of completion of in excess of 45 postgraduate units consisting of a combination of quarter and semester units.[1] Upon Dr. Hawkins' recommendation she was employed at salary classification "E," indicating at least 45 postgraduate units. Mr. Shoban submitted proof of completion of 18 quarter units. He was recommended for employment in classification "C" for teachers having in excess of 15 postgraduate units. Plaintiffs were employed for the school year 1965-66 at the recommended classifications of "E" and "C" and were paid annual salaries of $7,800 and $6,700 respectively. They were re-employed for the year 1966-67 at the same classification but at advanced steps therein.

During the summer of 1966 Mr. Mallory succeeded Dr. Hawkins as district superintendent. He undertook a review of the salary classification of District employees and determined that plaintiffs had been erroneously credited with full units of postgraduate studies for quarter units contrary to the District's salary regulations. Mr. Mallory determined that the quarter units should have been adjusted to semester units by applying a conversion factor of 1.5 quarter units for a semester unit. Section 40103, title 5, of the California Administrative Code, prescribing degree requirements at California State Colleges provides: "The standard unit of measure used in reference to curriculum and degree requirements is the semester unit. This may be converted into quarter units by multiplying by factors of 1.5." It is undisputed that if the 1.5 conversion factor had been applied to the postgraduate units established by Miss Lambach, she would only have had enough semester units to entitle her to classification "D" on the salary schedule, and if a like adjustment were made for Mr. Shoban, he should have been placed in classification "B."

---

[1] Although the record is not entirely clear as to the precise number of graduate units established by Miss Lambach, at oral argument before this court it was stipulated that she did submit transcripts verifying completion of in excess of 45 postgraduate units consisting of a combination of quarter and semester units.

Pursuant to Mr. Mallory's report and recommendation, in the fall of 1966 the Board of Trustees determined that plaintiffs had been improperly classified, reclassified them to classifications "D" and "B" respectively and ordered that the alleged overpayments during the time plaintiffs were improperly classified should be recovered by the District. Pursuant to the Board's order, deductions totalling $890 (alleged overpayments of $800 for 1965-66 and $90 for 1966-67) were made from Miss Lambach's paychecks and a deduction of $400 was made from Mr. Shoban's salary.

The central issue in the lawsuit was whether, under the District's salary schedule and regulations, quarter units of postgraduate work should be given the same weight as semester units. The District's salary regulation, known as Policy 4141, adopted March 2, 1965, required credit to be given for postgraduate units of work but failed to specify whether the unit should be quarter or semester. It read in relevant part as follows:

"Units to be credited beyond a degree must be taken after the degree was obtained, except that those taken during the *semester* in which degree requirements were completed, and not a part of the requirements, may also be credited. [Italics added.]

"All units credited for classification change after the Bachelor's Degree must be upper division or graduate in an accredited college, defined as any institution accepted by the State Board of Education for accrediting purposes, or those institutions accredited by the Western College Association or other similar associations.

". . . . . . . . . . . . .

"A salary schedule shall be adopted each year. Stipulations thereon shall be considered a part of this policy."

On October 6, 1966, on the recommendation of Superintendent Mallory, the Board of Trustees adopted a resolution stating "that in Policy 4141 wherever the word 'unit' or the word 'hour' appears that the word 'semester' be inserted before it. . . ."

The Board's president testified that Policy 4141, as originally adopted, was intended to refer to semester units and that the Board assumed that it would be so understood. The Board member who moved the adoption of Policy 4141 testified that he assumed that the reference to postgraduate units was intended to mean semester units and did not see the need for

further specificity because he was not then aware of any California colleges being on the quarter system. Both trustees testified that the October 1966 resolution was intended for clarification and not as a change in policy. Robert Reesman, a teacher employed by the District, testified that when he was employed for the school year 1964-65 his postgraduate quarter units were converted to semester units by the application of the 1.5 factor, that the same classification was continued for the school year 1965-66, and that he knew of at least one other teacher employed by the District whose postgraduate quarter units were similarly converted to semester units· for salary classification purposes. Reesman also testified that he was a member of the teacher salary committee that recommended a salary schedule to the Board for the year 1965-66. A copy of the committee's report was received in evidence. It recommended credit for postgraduate units with the designation "S.H." after the word "unit." Reesman testified that "S.H." meant semester hours.

Mr. Mallory testified that he had never heard of an instance where quarter units were given the same weight as semester units for teacher salary classification and in his opinion it would be unfair to do so. Mr. Shoban admitted that normally 30 semester units or 45 quarter units were required for a master's degree.

Plaintiffs' position at trial was that under Policy 4141 they were entitled to a "unit" credit for each quarter unit of postgraduate work. They testified that they accepted employment on Dr. Hawkins' representations that they would be classified on that basis; that they had no knowledge that the District's regulations made a distinction between quarter and semester postgraduate units; that neither the salary schedule nor Policy 4141 made such distinction; and that, in their opinion, in terms of the actual study required to earn them, a quarter unit was roughly the equivalent of a semester unit.

The court made findings to the effect that prior to the adoption of the Board's resolution in October 1966, the salary schedule and District's regulations made no distinction between quarter units and semester units, that the October 1966 resolution constituted a change in District policy, and that the reclassification of plaintiffs constituted an unlawful retroactive application of the new policy. The court concluded that plaintiffs were entitled to a peremptory writ of mandate commanding the Board of Trustees to restore them to their original salary classifications and to the repayment of the

sums withheld from their salaries. Judgment was entered accordingly.

The District contends that the trial court's determination that prior to October 1966 the salary regulations permitted the same weight to be given to quarter units as semester units for salary classification purposes is erroneous. We agree with that contention.

While the trial court's resolution of that issue is contained in the findings of fact, the proper construction of the salary regulation is a question of law. ▮ Where the facts are not in conflict and the issue involves the proper application of a statute or administrative regulation, a reviewing court is not bound by the trial court's determination. (*Western Contracting Corp.* v. *State Board of Equalization,* 265 Cal.App.2d 568, 575 [71 Cal.Rptr. 472]; *Millbrae Assn. for Residential Survival* v. *City of Millbrae,* 262 Cal.App.2d 222, 245 [69 Cal.Rptr. 25]; *California School Emp. Assn.* v. *Willits Unified School Dist.,* 243 Cal.App.2d 776, 781 [52 Cal.Rptr. 765]; *Gibbons & Reed Co.* v. *Department of Motor Vehicles,* 220 Cal.App.2d 277, 285 [33 Cal.Rptr. 688, 927].) ▮ In the case under review the cause was submitted on stipulated facts and supplemental documentary and testimonial evidence. There was no substantial conflict in the supplemental evidence bearing upon the interpretation of the salary regulation. We are, therefore, not bound by the trial court's finding, but must make our own determination respecting the proper interpretation of the salary regulation. (See *Western Contracting Corp.* v. *State Board of Equalization, supra,* 265 Cal.App. 2d 568, 575; *Gibbons & Reed Co.* v. *Department of Motor Vehicles, supra,* 220 Cal.App.2d 277, 285.)

▮ In fixing compensation of teachers, a school board is empowered to adopt a salary schedule provided it is not arbitrary, discriminatory, or unreasonable and provided further that any allowance for years of training and experience is uniform and based upon reasonable classifications. (Ed. Code, §§ 13502, 13506; *Rible* v. *Hughes,* 24 Cal.2d 437, 444 [150 P.2d 455, 154 A.L.R. 137]; *Kacsur* v. *Board of Trustees,* 18 Cal.2d 586, 591 [116 P.2d 593]; *Lawe* v. *El Monte School Dist. of Los Angeles,* 267 Cal.2d 20, 22 [72 Cal.Rptr. 554]; *San Diego Federation of Teachers* v. *Board of Education,* 216 Cal. App.2d 758, 762 [31 Cal.Rptr. 146].) ▮ Giving postgraduate quarter units the same weight as is given to semester units for salary classification purposes would be arbitrary and

unreasonable. It is undisputed that more class hours and study are required to earn semester units than quarter units.[2] For an equivalent degree, a semester unit is the equivalent of one and one-half quarter units. For example, it was conceded that the requirement for a master degree is 30 semester units or 45 quarter units. The interpretation urged by plaintiffs would favor teachers possessing quarter units over those possessing semester units. Two of the board members testified that in adopting Policy 4141 the Board had in mind semester units. The teachers' salary committee that recommended the 1965-66 salary schedule contemplated that credit for postgraduate units would be based upon semester units. There was evidence that other teachers possessing postgraduate quarter units had those units converted to semester units for salary purposes. We conclude from the foregoing that the word "unit" as used in Policy 4141 and in the salary schedule meant semester units.

 It necessarily follows that the court's finding that the October 1966 resolution adding the word "semester" before the word "unit" in Policy 4141 constituted a change in policy was also erroneous. Accordingly the Board's action in reclassifying plaintiffs did not constitute an invalid retroactive application of a new rule such as was proscribed in *Aebli* v. *Board of Education*, 62 Cal.App.2d 706, 757-758 [145 P.2d 601]. (See *Barnes* v. *Board of Trustees*, 218 Cal. App.2d 881, 886-887 [32 Cal.Rptr. 609].) The Board's order reclassifying plaintiffs was valid.

The remaining question is whether the District was empowered to recoup the alleged overpayments. We have concluded that the District is estopped to assert that plaintiffs were overpaid.

 The theory that estoppel may not be asserted against a governmental agency is a progeny of the broader doctrine of sovereign immunity. (See 2 Davis, Administrative Law Treatise, 491, 492.) In this state, the doctrine of soverign immunity has been repudiated as "an anachronism, without rational basis." (*Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211, 216 [11 Cal.Rptr. 89, 359 P.2d 457] ; see 2 Witkin, Cal. Procedure (1954) § 46.) The rigid application of the concept that

---

[2] In addition to the evidence presented at trial, we take judicial notice of the fact that when the University of California switched from semester to quarter operation, the unit requirements for a bachelor's degree from the College of Letters and Science increased from 120 to 180 units. (Comparison of University of California, Riverside, General Catalogue for 1965-1966, p. 38, with 1969-1970 General Catalogue, p. 52.)

estoppel may not be invoked against the government is likewise inconsistent with the underlying principles of a democratic society. A citizen ought to have the right to expect his government to deal fairly with him. In *Farrell* v. *County of Placer*, 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323], in holding that the county was estopped from rejecting a claim for noncompliance with a claim statute, the court noted at page 628: "It has been aptly said: 'If we say with Mr. Justice Holmes, "Men must turn square corners when they deal with the Government," it is hard to see why the government should not be held to a like standard of rectangular rectitude when dealing with its citizens.' (48 Harv.L.Rev. 1299.)'' *Woodie* v. *Byram*, 132 Cal.App.2d 651, 654 [282 P.2d 920].) Commentators have been uniformly critical of judicial reluctance to invoke the doctrine of estoppel against a governmental agency where justice and equity so require. (2 Davis, Administrative Law Treatise, *supra*, pp. 514-519; Newman, *Should Official Advice be Reliable?* 53 Colum.L.Rev. 374; Comment, *Never Trust a Bureaucrat: Estoppel Against the Government*, 42 So.Cal.L.Rev. 391; Comment, *Estoppel Against the Government in California*, 44 Cal.L.Rev. 340.)

In this state we have rejected the rigid application of the notion that equitable estoppel may not be invoked against the government. The doctrine has most commonly been applied where tort claimants have been misled by governmental employees with respect to procedural or time requirements of a claim statute. (*Rand* v. *Andreatta*, 60 Cal.2d 846, 849 [36 Cal.Rptr. 846, 389 P.2d 382]; *Farrell* v. *County of Placer*, *supra*, 23 Cal.2d 624, 628; *Cruise* v. *City and County of San Francisco*, 101 Cal.App.2d 558, 563 [225 P.2d 988]; see *Merco Constr. Engineers, Inc.* v. *Los Angeles Unified School Dist.*, 274 Cal.App.2d 154, 160 [79 Cal.Rptr. 23].) The application of the doctrine, however, has not been confined to such cases. It has been applied in many varying situations. (See *Farrell* v. *County of Placer*, *supra*, 23 Cal.2d 624, 627-628.) For example, the doctrine has been applied to estop a school district from denying a teacher permanent classification (*Briney* v. *Santa Ana High School Dist.*, 131 Cal.App. 357, 361 [21 P.2d 610]; *Crawford* v. *Board of Education*, 20 Cal.App. 2d 391, 396 [67 P.2d 348]); to estop a municipality from asserting a violation of a zoning regulation (*Woodie* v. *Byram*, *supra*, 132 Cal.App.2d 651, 654); to estop a city from denying the validity of a contract to serve water to a subdivision outside the boundary of a city (*Sawyer* v. *City of*

*San Diego,* 138 Cal.App.2d 652, 662 [292 P.2d 233]) ; and to estop a city from abandoning a condemnation action (*McGee* v. *City of Los Angeles,* 6 Cal.2d 390, 394 [57 P.2d 925] ; *Times-Mirror Co.* v. *Superior Court,* 3 Cal.2d 309, 326 [44 P.2d 547].)

██ It has been said that ordinarily estoppel should not be invoked where to do so would be harmful to some specific public policy or public interest or where it would enlarge the power of a governmental agency or expand the authority of a public official. (*McNeil* v. *Board of Retirement,* 51 Cal.2d 278, 285 [332 P.2d 28] ; *Boren* v. *State Personnel Board,* 37 Cal.2d 634, 643 [234 P.2d 98] ; *County of San Diego* v. *California Water etc. Co.,* 30 Cal.2d 817, 825, 826 [186 P.2d 124, 175 A.L.R. 747].) Subject to those qualifications, estoppel may be invoked against a governmental agency where ''justice and right require it.'' (*Driscoll* v. *City of Los Angeles,* 67 Cal.2d 297, 306 [61 Cal.Rptr. 661, 431 P.2d 245] ; *Sawyer* v. *City of San Diego, supra,* 138 Cal.App.2d 652, 662.) ██ The elements which must be present are: ''(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.'' (*Driscoll* v. *City of Los Angeles, supra,* p. 305.)

██ In the case under review, the necessary elements for estoppel are present. Both plaintiffs came from the State of Colorado to accept employment with defendant District; defendant's superintendent represented to plaintiffs that they would be given full credit for postgraduate units without regard to whether they were quarter or semester units; plaintiffs had no knowledge that the district regulations made any distinction between the two types of units; the salary regulations which were a part of the contract of employment failed to specify whether credit for postgraduate units was to be based on a quarter or semester basis; and plaintiffs accepted employment and rendered their services in reliance upon the representations of the superintendent. ██ In these circumstances equity and justice require that the District be estopped from recovering the alleged overpayments.

Though not involving the issue here presented, the court in *Phillis* v. *City of Santa Barbara,* 229 Cal.App.2d 45, 57 [40 Cal.Rptr. 27], made the following relevant observation: ''When required by considerations of common justice [cita-

tion], especially to its own employees, a municipality may be estopped." In *Semaan* v. *Mumford,* 355 F.2d 704, in holding that an employee of the Library of Congress had alleged sufficient facts to show that the government was estopped to deny plaintiff the status of a permanent employee, Chief Judge Bazelon noted at footnote 6, page 706: "Since the Government agency to be estopped here possessed the authority to do what it appeared to be doing, was not depriving the public of the protection of any statute, and was acting in a proprietary capacity *qua* employer, there is no reason to bar an estoppel here." Were the issue here one arising between a private employer and its employee, there is little doubt that estoppel would be invoked. We cannot discern any overriding public policy or public interest which would compel a different result in the instant case merely because the employer is a public agency.

The result we reach is not inconsistent with *Aebli* v. *Board of Education, supra,* 62 Cal.App.2d 706, relied upon by the District. While on its face, *Aebli* would appear to empower the board to recoup the alleged overpayments, the facts in that case are materially distinquishable from those present in the case under review. In *Aebli,* that an obvious clerical error or mistake in salary classification had been made by employees of the district, was discernible from reading the salary schedule. In the instant case the uncertainity in plaintiffs' classifications stemmed from the lack of specificity in the District's regulation. Nor is *Holtzendorff* v. *Housing Authority,* 250 Cal.App.2d 596 [58 Cal.Rptr. 886], also cited by District, controlling. In that case Mr. Holtzendorff, director of the Housing Authority, was reimbursed by the Authority for legal fees and expenses incurred by him in a successful defense of a criminal prosecution for alleged embezzlement of funds of the Authority. The Authority subsequently determined that the reimbursement was unauthorized and sought recovery of the amounts paid. In response to Mr. Holtzendorff's contention that recovery could not be had on the theory of mistake unless it was one of. fact, the reviewing court, citing *Aebli* v. *Board of Trustees, supra,* 62 Cal.App.2d 706, stated at p. 732, that generally speaking, money paid out by a governmental agency through mistake of law or fact may be recovered because public funds are "trust funds." That case, however, did not involve the question of equitable estoppel. None of the elements of estoppel were present.

While we have found no precedent in this state for invoking estoppel under the precise circumstances here present, it is our conclusion that justice and equity require it. ▇ "Equity does not wait upon precedent which exactly squares with the facts in controversy, but will assert itself in those situations where right and justice would be defeated but for its intervention. 'It has always been the pride of courts of equity that they will so mold and adjust their decrees as to award substantial justice according to the requirements of the varying complications that may be presented to them for adjudication.' (*Humboldt Sav. Bank* v. *McCleverty*, 161 Cal. 285 [119 Pac. 82], citing Story's Equity Jurisprudence, secs. 28, 439; 1 Pomeroy's Equity Jurisprudence, sec. 60.)" (*Times-Mirror Co.* v. *Superior Court, supra*, 3 Cal.2d 309, 331; *Bertero* v. *National General Corp.*, 254 Cal.App.2d 126, 145 [62 Cal.Rptr. 714]; *Bisno* v. *Sax*, 175 Cal.App.2d 714, 728 [346 P.2d 814].)

▇ Although estoppel ordinarily presents a question of fact, where, as in the present case, the facts are undisputed and only one reasonable conclusion can be drawn from them, it presents a question of law. (See *Albers* v. *County of Los Angeles*, 62 Cal.2d 250, 266 [42 Cal.Rptr. 89, 398 P.2d 129]; *Henry* v. *City of Los Angeles*, 201 Cal.App.2d 299, 306 [20 Cal.Rptr. 440].) We may, therefore, properly consider the issue of estoppel even though the trial court made no specific finding thereon.

That portion of the judgment directing defendant to pay plaintiffs the amounts withheld from their respective salaries (Miss Lambach $890 and Mr. Shoban $490) is affirmed; that portion of the judgment ordering defendant to reclassify plaintiffs is reversed.

Kerrigan, Acting P. J., and Gardner, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.