[Civ. No. 59875. Second Dist., Div. Five. May 20, 1981.]

A. J. SETTING COMPANY, INC., Plaintiff and Appellant, v.
TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY AND
COLLEGES et al., Defendants and Respondents.

COUNSEL

MacCabe, George & Harvey and Ralph N. George for Plaintiff and Appellant.

George Deukmejian, Attorney General, and John J. Crimmins, Deputy Attorney General, for Defendants and Respondents.

OPINION

**STEPHENS, Acting P. J.—**

STATEMENT OF THE CASE

On February 22, 1979, plaintiff A. J. Setting Company, Inc. (Setting), a subcontractor, filed a first amended complaint alleging that defendant Skipper & Company (Skipper), a general contractor, owed a balance of $24,613.64 under a labor and materials supply contract executed on April 21, 1977, by the two parties. Defendant Skipper contracted on April 13, 1977, with defendant Trustees of the California State University and Colleges, (Trustees) for the installation of a boiler system on defendant Trustees' premises at Long Beach State University. Plaintiff joined defendant Trustees in this action to enforce payment of retained funds pursuant to a stop notice.

On January 21, 1980, the trial court granted defendant Trustees' motion for summary judgment based on four findings. The court found that the action on the stop notice was barred by Civil Code section 3210[1] in that the action was not filed by plaintiff within the time limits prescribed by section 3210 and that estoppel could not be asserted to extend the prescribed time limitations. Additionally, the court found that even if estoppel was applicable, plaintiff had not established facts which if true would estop defendant Trustees from asserting the time limits of section 3210. Finally, considering plaintiff's action against

---

[1]Section 3210 of the Civil Code reads as follows: "*An action* against the original contractor and the public entity to enforce payment of the claim stated in the stop notice may be commenced at any time after 10 days from the date of the service of the stop notice upon the public entity and *shall be commenced not later than 90 days following the expiration of the period within which stop notices must be filed as provided in*

defendant Trustees other than as a stop notice action, the court found the action barred by Government Code section 945.4.[2]

Plaintiff Setting timely filed this appeal contending that each of the trial court's findings was erroneous. Plaintiff specifically contends that estoppel may be used to extend the time limits of Civil Code section 3210. Plaintiff contends that assertion of estoppel against defendant Trustees would be appropriate because it allegedly detrimentally relied upon the actions and representations made by defendant Trustees' agents and employees to plaintiff.

## FACTS

A prime contract for the installation of a boiler system on defendant Trustees' premises at the Long Beach State University was executed by defendant Trustees and defendant Skipper on April 13, 1977. Eight days later, on April 21, 1977, plaintiff Setting subcontracted with defendant Skipper to provide labor and materials necessary for the installation of the boiler system at the university. The total subcontract price, including a contract extra, was $67,863.64.

As of September 13, 1977, plaintiff had been paid $40,000 by defendant Skipper for the labor and material plaintiff provided. Although defendant Skipper continued to receive payments from defendant Trustees through December 9, 1977, defendant Skipper did not pay plaintiff the balance of $24,863.64 due under the subcontract. Alleging breach of contract in its answer, defendant Skipper specifically denied that this balance is due plaintiff.

---

*Section 3184.* No such action shall be brought to trial or judgment entered until the expiration of said 90-day period. *No money or bond shall be withheld by reason of any such notice longer than the expiration of such 90-day period unless proceedings be commenced* in a proper court within that time by the claimant to enforce his claim, and *if such proceedings have not been commenced such notice shall cease to be effective and the moneys or bonds withheld shall be paid to or delivered to the contractor or other person to whom they are due.*" (Italics added.)

[2]Section 945.4 of the Government Code reads as follows: "Except as provided in Sections 946.4 and 946.6, no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, in accordance with Chapters 1 and 2 of Part 3 of this division."

When further payments were not received, Wayne Najarian, acting as agent for plaintiff, contacted Carl Androff, a building coordinator in physical planning and development at Long Beach State University, about defendant Skipper's failure to pay plaintiff. In his declaration, Androff states that he urged Najarian to pursue legal claims on any funds owed by Skipper. On January 14, 1978, sometime after this conversation, Androff received a letter from Najarian which warned that a stop notice would be filed if payments to plaintiff remained delinquent. On January 18, 1978, plaintiff served defendant Trustees with a stop notice to withhold payment to defendant Skipper based on a claim that the contractor owed plaintiff $24,613.64. Wayne Najarian's declaration stated that he was reasonably certain that the required filing fee was submitted with the stop notice. However, William Groessman, assistant construction engineer for Trustees, stated in his declaration that there was no evidence in the chancellor's office that the filing fee was submitted. The stop notice made no reference to the filing fee.

On May 1, 1978, a notice of completion of the contract was recorded in the recorder's office of Los Angeles County. Wayne Najarian's supplemental declaration states that he had several conversations with defendant Trustees' agents, Whalen, Androff, and Rignor during the period of May through August of 1978. In these conversations, Najarian claims that he was repeatedly assured that retained funds were still available and that plaintiff would be paid. He claims he was also told that defendant Skipper had not completed the work required on the boiler project. Najarian also claims that although he was not told that a notice of completion was not filed, these conversations led him to believe that the job was not complete. Defendant Trustees deny that any such statements or representations were made by its agents to plaintiff.

On January 3, 1979, plaintiff filed an action against defendant Skipper for damages for breach of contract. Najarian claims that on January 25, 1979, he was advised by Androff and Whalen to present defendant Trustees with a release of notice to withhold and an authorization for payment signed by defendant Skipper to secure payment of plaintiff's claim in full. Najarian secured the requested documents. When the documents were presented to defendant Trustees, payment was refused.

On February 22, 1979, plaintiff filed a first amended complaint joining Trustees as a defendant. Plaintiff appeals from the summary judgment granted in favor of defendant Trustees.

## DISCUSSION

██ On this appeal from summary judgment, plaintiff Settings' principal contention is that the time limits of Civil Code section 3210 can be extended by estoppel against defendant Trustees, a public entity. Plaintiff contends that the actions and representations of their agents caused plaintiff to believe to its detriment that legal action pursuant to section 3210 was unnecessary and that, therefore, defendant should be estopped to assert the time limits prescribed by section 3210.

Summary judgment is appropriate if, "assuming all factual require-ments of estoppel have been met, no estoppel could exist as a matter of law." (*State of California* v. *Haslett Co.* (1975) 45 Cal.App.3d 252, 256 [119 Cal.Rptr. 78].) For the purposes of this appeal, it will be as-sumed that defendant Trustees' agents did make the statements alleged by plaintiff and that these statements reasonably induced plaintiff to believe that legal action to foreclose the retained funds was unneces-sary. Thus, the basic question is whether, assuming plaintiff Setting has met the factual requirements of an estoppel, estoppel may be asserted against defendant Trustees, a public entity, to extend the time limits within which plaintiff's action to enforce a valid stop notice claim may be brought.

██ With respect to public or governmental agencies, "'ordinarily es-toppel should not be invoked where to do so would be harmful to some specific public policy or public interest or where it would enlarge the power of the governmental agency or expand the authority of a public official.'" (*Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567, 580 [108 Cal.Rptr. 293], quoting *Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 544 [81 Cal.Rptr. 112].) Therefore, in the instant case, resolution of the issue whether estoppel, as a matter of law, may be invoked against defendant Trustees demands a two-fold consideration of the "Stop Notice for Public Works" code sections of the Civil Code.[3] First, the public policy or interest constituting the backbone of the stop notice code sections must be considered in light of the rights and duties of the parties involved by these sections. Second, the effect estoppel would have upon those rights and duties must also be considered since it pertains to the question of defendant Trustees' abili-ty to extend the time limits set forth in section 3210.

---

[3]See Civil Code, division 3, title 15, chapter 4, articles 1-6.

■   Under the principles of sovereign immunity, liens for labor or supplies on public property are not permitted. It was stated in *Sunlight Elec. Supply Co. v. McKee* (1964) 226 Cal.App.2d 47, 50 [37 Cal. Rptr. 782], that "[t]o allow such [liens] would produce unthinkable results which [would] seriously affect the public interest." The court went on to say that "[i]n order to give protection to materialmen and labor claimants and yet protect the public and public property the Legislature has, on public works projects, provided the stop-notice procedure without lien rights for intercepting funds due from a public agency to the contractor." (*Id.* at p. 50.) Thus, materialmen and labor claimants receive the protection of the stop notice code sections which were enacted to establish a right to payment which was otherwise unavailable to claimants involved in public works projects. The stop notice code sections recognize the public interest mandate that public property remain unencumbered by mechanics' liens by only permitting a lien upon funds the public entity is otherwise obligated to pay to the prime contractor.

Specifically, Civil Code section 3181[4] permits any person, who would be entitled to claim a lien on private works, other than an original contractor to serve a stop notice on the public entity responsible for the public work. Plaintiff Setting, as a subcontractor, fell within the purview of section 3181 of the Civil Code since it allegedly was not paid for the labor and materials it provided for work done on public property belonging to defendant Trustees at Long Beach State University.

Once a stop notice is filed by a claimant with the appropriate public entity, that entity is required by section 3186 of the Civil Code[5] to withhold the amount claimed together with sufficient funds to cover litigation and court costs. It is undisputed that plaintiff Setting filed a timely stop notice with defendant Trustees. Pursuant to section 3186, defendant Trustees were obligated to withhold an appropriate amount of funds sufficient to cover plaintiff's stop notice claim. The evidence submitted by defendant Trustees in the declaration of Carl Androff indicates that funds were withheld.

---

[4]Civil Code section 3181 provides as follows: "Except for an original contractor, any person mentioned in Section[s] 3110, 3111, or 3112, or furnishing provisions, provender, or other supplies, may serve a stop notice upon the public entity responsible for such public work in accordance with the provisions of this chapter."

[5]Section 3186 of the Civil Code reads as follows: "It shall be the duty of the public entity, upon receipt of a stop notice pursuant to this chapter, to withhold from the original contractor, or from any person acting under his authority, money or bonds (where bonds are to be issued in payment for the work of improvement) due or to be-

While recognizing a claimant's right to payment, the stop notice code sections do not thereby ignore the prime contractor's legal right to those funds. The contractor's right to payment arises pursuant to and in accordance with the terms and conditions of the contract executed between the contractor and the public entity. Civil Code section 3187[6] is responsive to the contractor's right to payment since a public entity is not required to anticipate stop notice claims. This section specifically provides that payments to the prime contractor are not prohibited unless a stop notice is on file *before* payments are made to the prime contractor. The prime contractor is also entitled to payments "in excess of an amount sufficient to answer the total amount of the claims stated in stop notices on file at the time of such payment . . . ." Thus, only when served with a stop notice does the public entity mandatorily become a custodian of funds whose legal title rests in the prime contractor.

After a stop notice is filed, the contractor regains its right to the withheld funds only upon the occurrence of any one of several events enumerated by the stop notice sections pertaining to the rights and duties of the claimants, the contractor, and the public entity subsequent to the filing of a stop notice.[7] The most significant act which must be taken by a claimant after filing a stop notice to prevent release of withheld funds to the contractor is the commencement of proceedings to enforce the stop notice claim. If such proceedings are not initiated the stop notice is not perfected as required by section 3210, and the public entity

---

come due to such contractor in an amount sufficient to answer the claim stated in such stop notice and to provide for the reasonable cost of any litigation thereunder."

[6]Section 3187 reads as follows: "This chapter does not prohibit (a) the payment of any money or bonds to the original contractor or his assignee unless a stop notice is on file before the disbursing officer has actually surrendered possession of either the warrant, check, bonds, or money, or (b) the payment to the original contractor or his assignee of any money due him in excess of an amount sufficient to answer the total amount of the claims stated in stop notices on file at the time of such payment plus such interest and court costs as might be reasonably anticipated in connection with the claims."

[7]The public entity is required to withhold the amounts claimed in a stop notice until and unless: (1) it accepts a release bond from the contractor, (Civ. Code, § 3196); or (2) the contractor files an affidavit for summary release (Civ. Code, § 3198) and the claimant fails to file a counter affidavit within the time specified by the entity (Civ. Code, § 3200); or (3) the claimant fails to commence a stop notice action within the time limits prescribed by Civil Code sections 3184 and 3210; or (4) the action to enforce a stop notice is dismissed (Civ. Code, §§ 3212, 3213) or (5) judgment is rendered against the claimant in a stop notice action (Civ. Code, § 3213) or in a summary declaration of rights proceedings (Civ. Code, § 3203).

must automatically release the funds to the contractor or to other persons to whom they are due. ■ Civil Code section 3210 not only requires foreclosure proceedings to perfect stop notice claims, it also imposes strict time constraints within which to commence such proceedings. Failure to file a timely action to foreclose on a stop notice fund is fatal whether the action is filed by the claimant prematurely (*Bohannon Bros. Inc.* v. *Lo Jean Dev. Co.* (1969) 3 Cal.App.3d 200 [82 Cal.Rptr. 922]) or late (*Smith* v. *Union Bank & Trust Assn.* (1971) 15 Cal.App. 3d 413 [93 Cal.Rptr. 282].)

Thus, the various stop notice code sections discussed above expressly delineate the procedures a claimant must take to intercept the funds which otherwise legally belong to the prime contractor in order to protect the otherwise vulnerable claimant's right to payment by the contractor. The protection afforded to such claimants merely forestalls payment of the funds withheld to the contractor. If the claimant fails to take appropriate actions within the time limits prescribed by section 3210, the stop notice ceases to be effective, the withholding periods terminate, and the claimant's right to the funds terminates as well. Although in the public interest mechanics' liens upon public property are forbidden, the stop notice code sections demonstrate a public interest in fairness directed towards both the claimant and contractor which commands strict compliance with the procedures set forth in the stop notice codes. Thus, having determined the nature of the public policy and interests reflected in the stop notice code sections, the effect estoppel would have upon the rights and duties of the parties involved in the case at bar must be considered.

In the instant case, when plaintiff Setting filed a stop notice with defendant Trustees, it acquired an immediate right against the earnings to be paid to defendant Skipper by defendant Trustees in an amount sufficient to cover the claim of $24,613.64 stated in the stop notice plus costs of any litigation. However, this right against the withheld funds was required by Civil Code sections 3210 and 3184 to be perfected by filing an action on the stop notice within 120 days after the notice of completion was recorded.[8] The notice of completion was recorded on

---

[8]Section 3184 of the Civil Code reads as follows: "To be effective, any stop notice pursuant to this chapter must be served before the expiration of: [¶] (a) Thirty days after the recording of a notice of completion (sometimes referred to in public works as a notice of acceptance) or notice of cessation, if such notice is recorded. [¶] (b) If no notice of completion or notice of cessation is recorded, 90 days after completion or cessation."

May 1, 1978. Thus, plaintiff should have commenced the present action against defendant Trustees no later than August 29, 1978. The stop notice action against defendant Trustees was not commenced until February 22, 1979—almost six months beyond the time permitted by Civil Code section 3210. In *Smith* v. *Union Bank & Trust Assn.* (1971) 15 Cal.App.3d 413 [93 Cal.Rptr. 282], the subcontractor's action to enforce a stop notice was held barred because the action was not filed within the 90-day period permitted by section 3210.

Plaintiff contends, however, that because of the statements made by defendant Trustees' agents, he was induced not to file this action to foreclose on the stop notice. Through the vehicle of estoppel, plaintiff requests this court to extend the time period within which plaintiff was required to bring its action. However, if estoppel were applied in the instant case, defendant Trustees' power to withhold funds from the contractor, defendant Skipper, would be expanded in contravention of the requirements of Civil Code section 3219. Civil Code section 3210 expressly dictates the release of withheld funds to the contractor or other persons to whom they are due.

It is well established that a public entity may not be estopped where it has not acted in compliance with a statute which is the measure of its powers. In *Santa Monica Unified School Dist.* v. *Persh* (1970) 5 Cal. App.3d 945 [85 Cal.Rptr. 463], a contract for the sale of land to the school district was held unenforceable because the procedural requisites of approval and ratification of the contract by the school board were not met. Although the power to contract was statutorily recognized, the power was exceeded in *Persh* because the statutory limitations upon that power were exceeded. Similarly, defendant Trustees were obligated by Civil Code section 3186 to withhold funds from defendant Skipper upon receipt of plaintiff's stop notice. Defendant Trustees were also obligated by Civil Code section 3210 to release those funds to Skipper or to other claimants with perfected stop notices after the time period permitted for perfection had lapsed. To permit extension of the time period allowed for perfection of stop notices would permit defendant Trustees to continue to withhold funds beyond the period allowed. Extension of the perfection period would effectively sanction a power not expressly provided by the stop notice codes.[9]

---

[9]Although the record is silent, presumably the Trustees released funds withheld pursuant to plaintiff's stop notice to defendant Skipper or included them with the funds presently held for the benefit of other claimants when plaintiff failed to file an action

Extension of the time limits of section 3210 of the Civil Code would also result in frustration of the public policy subsumed in the stop notice codes. The prime contractor's right to withheld funds would be suspended despite the fact that he might well rely upon their release to him after the period of commencing foreclosure actions under Civil Code section 3210 has lapsed. Therefore, estoppel, as a matter of law, cannot be invoked to extend the time limits set forth in Civil Code section 3210.[10]

Since estoppel may not be invoked as a matter of law to extend the time limits of Civil Code section 3210, there were no triable issues of fact presented below. ▮ Finally, plaintiff contends that the trial court erred by finding that the action, if construed other than as a stop notice action, is barred by Government Code section 945.4. Plaintiff does not cite any authority to support its contention. However, the authority cited by defendant Trustees, *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223], supports the finding of the trial court.

Summary judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

---

on the notice by August 29, 1978. The declaration of Wayne Groessman indicated that there are approximately $43,000 in claims exclusive of plaintiff's claim. The trustees hold this money for those claims because other claims far exceed the adjusted contract earnings of $29,185.19. Section 3190 entitles multiple claimants to a pro rata share of the withheld funds if such funds are insufficient to fully satisfy each claim. *Idaco Lumber Co.* v. *Northwestern S. & L. Assn.* (1968) 265 Cal.App.2d 490 [71 Cal.Rptr. 422] held that claimants were entitled to a pro rata share only if each claimant had perfected their respective claims by filing a separate action pursuant to Civil Code section 3210 or as a result of interpleader or consolidation of stop notice actions pursuant to section 3214, Civil Code. The lender in *Idaco* was liable for the full claim of the plaintiff subcontractor who timely sought enforcement of its claim because the lender had made payments to other stop notice claimants who had not perfected their claims. Therefore, if plaintiff Setting is permitted to proceed with this foreclosure action, the other claimants to the withheld fund will suffer reduction of their respective pro rata share of the fund, notwithstanding the fact that they may have complied with each of the relevant stop notice code sections.

[10]Plaintiff is not without remedy. The action for damages against defendant Skipper survives notwithstanding the dismissal of the action on the stop notice.