[Civ. No. 26454.   Second Dist., Div. One.   Oct. 15, 1963.]

LIONEL HAYES UHLMANN, JR., Plaintiff and Appellant,
v. ALHAMBRA CITY HIGH SCHOOL DISTRICT OF
LOS ANGELES COUNTY, Defendant and Respondent.

Richard G. Harris for Plaintiff and Appellant.

Harold W. Kennedy, County Counsel, and Terry C. Smith, Deputy County Counsel, for Defendant and Respondent.

WOOD, P. J.,—In the first cause of action (referred to therein as one for declaratory relief), plaintiff sought to recover commission as a real estate broker. In each of the three other causes of action, it was alleged that defendant became indebted to plaintiff in a specified amount of money (different amount in each cause of action) for services rendered as a real estate broker at the special instance and request of defendant.

In a nonjury trial judgment was for defendant. Plaintiff appeals from the judgment.

Appellant contends that the court erred in its interpretation of sections of the Education Code relative to a public school district's paying for services of a real estate broker in the sale of real property of the district.

In 1959 the board of trustees of the defendant Alhambra City High School District, desiring to sell a portion of the site of the Alhambra High School, placed a for-sale on the land. In June 1959 the property was appraised at $165,000. The board did not wish to advertise the property for sale (as required by section 16058 of the Education Code) without first having a firm offer to purchase it for at least the amount of the appraisal. In July 1959 Mr. Clay, the president of the board, orally requested the plaintiff, who is a licensed real estate broker, to attempt to find a purchaser, and he also told him to obtain further information regarding the property from the assistant superintendent of the district. In July, August, and September 1959, after plaintiff had so obtained such

further information, he sent letters to five chainstore companies, submitting the subject property for purchase by them. During 1959 and 1960, approximately ten persons made inquiries of officers of the district relative to purchasing the property, and six of them requested that "bid forms" be sent to them. In October 1960, when plaintiff told the president of the board that he had obtained a prospective purchaser, the president told him to submit a written offer to the board and to request that a resolution of intention to sell the property be published pursuant to requirements of the Education Code. Plaintiff submitted a written offer, on behalf of the Telegraph and Leland Land Company, to purchase the property for $166,500. At a meeting of the board on February 20, 1961, after the assistant superintendent said that a bona fide offer had been received, the board passed a resolution of intention to sell the property. Plaintiff, who was present at that meeting, was requested to advance $650 as a deposit for legal advertising in connection with the sale. He delivered his check for that amount to the board. (Ultimately the check was returned to him because he was not the successful bidder.) Thereafter, notice of the adoption of the resolution and of the time and place of holding a hearing for the purpose of selling the property was published (as required by section 16058 of the Education Code). The assistant superintendent prepared a "Bid Form" and a form letter regarding the sale. Copies of those forms were sent to plaintiff and to the six persons who had inquired about the property and had requested that bid forms be sent to them.

The resolution stated in part, as follows: The sale would be made at a minimum price of $165,000 cash. A public meeting of the board would be held on March 20, 1961, at 8 p.m., at which time sealed proposals to purchase the property would be received and considered. The board would pay to a licensed real estate broker, instrumental in procuring a buyer, a commission of five per cent of the total amount of the accepted bid, "it being understood that such commission shall be paid only if there is contained in or with a sealed proposal or stated in or with an oral bid, which is finally accepted, the name of the real estate broker to whom it is to be paid, and the amount or rate thereof; any such commission shall, however, be paid only out of money received by said Board from the sale of said property. In the event of a sale on a higher oral bid to a purchaser secured by a licensed real estate broker other than the broker who submitted the highest written proposal, the Board shall allow a commis-

sion on the full amount for which the sale is confirmed. One-half of the commission on the amount of the highest written proposal shall be paid to the broker who submitted it, and the balance of the commission on the purchase price to the broker who procured the purchaser to whom the sale was confirmed.''

The bid form (which was sent to plaintiff and others) stated in part: ''The undersigned [bidder] understands as follows: . . . Here the substance of the above-mentioned resolution was set forth.]''

In the form letter (which was sent to plaintiff and others) the assistant superintendent stated, in part: ''Under section 16057 of the Education Code of the State of California, school districts may, at their discretion, pay a commission to a licensed real estate broker who is instrumental in obtaining any proposal, provided, of course, such proposal is accepted. This, however, has been interpreted to mean that the school district must accept the highest net bid after deducting any commission. In the interest of avoiding confusion in the bidding process, may we suggest that brokers arrange for collection of any commission from their clients so that all bidding will be on the same basis.''

Pursuant to the terms of the resolution, a written sealed bid of $173,561 was submitted by plaintiff's principal, the Telegraph and Leland Land Company. In that bid plaintiff's name appeared as the name of the broker ''instrumental in obtaining this proposal.''

At the time specified in the resolution, March 20, 1961, a meeting of the board was held and sealed proposals to purchase the property were received and considered. The only written bid received was the one for $173,561 submitted by plaintiff's principal. Upon the call for oral bids at that meeting, numerous oral bids were made by Harold Hamlin who represented himself (was not represented by a broker), and by plaintiff upon behalf of the Telegraph and Leland Land Company. The highest bid by plaintiff was $221,000. The highest bid by Harold Hamlin was $225,000, and the property was sold to him. Mr. Hamlin was one of the six persons who had requested bid forms.

On April 3, 1961, plaintiff demanded, by letter, payment to him of a commission of $8,667.55, representing 5 per cent of the amount of the written bid of the Telegraph and Leland Land Company. The board refused to comply with the

demand, and plaintiff filed a formal claim with the board. The board refused to pay the claim.

The court made findings of fact which were in substance the same as the facts hereinabove stated.

Statutory provisions regarding the manner in which a sale of real property by a school district shall be made are in sections 16051 to and including 16068 of the Education Code. It may be stated generally that those sections require the board to adopt a resolution of intention to sell, specifying among other things the terms of the sale, and the commission if any which will be paid; to post and publish notice of adoption of the resolution and of the time and place of holding the meeting for the purpose of selling the property; to call for oral bids, at the meeting, before accepting a written proposal, and to accept the highest oral net bid of a responsible person (after deducting commission, if any) ; and in the event of a sale on a higher oral bid to a purchaser procured by a broker other than the broker who submitted the highest written proposal, to apportion the commission between the brokers in a manner hereinafter indicated.

It is to be noted that in the present case the highest oral net bid was not made by appellant broker, but was made by Mr. Hamlin who was not represented by a broker. If he had been represented by a broker, it is likely that a controversy regarding commission for appellant would not have arisen, since one of the code sections above referred to (§ 16062) expressly provides for apportionment of commission under such a circumstance. There is no express statutory provision for allowing a commission when the successful bidder is not represented by a broker.

Appellant argues that the board was authorized, in its discretion, to pay a commission to the broker who was instrumental in obtaining the highest written proposal, irrespective of whether he represented the successful bidder; that the board, in adopting the resolution of intention to sell, exercised its discretion in favor of paying a broker for his services in obtaining the highest written proposal; that since appellant obtained that bid of $173,357, he is entitled to a commission of five per cent thereof or $8,667.55.

Section 16057 of the Education Code provides: "If, in the discretion of the board, it is advisable to offer to pay a commission to a licensed real estate broker who is instrumental in obtaining any proposal, the commission shall be specified in the resolution. No commission shall be paid unless there is contained in or with the sealed proposal or stated in or with

the oral bid, which is finally accepted, the name of the licensed real estate broker to whom it is to be paid, and the amount or rate thereof. Any commission shall, however, be paid only out of money received by the board from the sale or rental of the real property.''

Appellant's above-mentioned argument regarding the board's discretionary power to pay a commission is based upon the first sentence of said section 16057, namely, ''If, in the discretion of the board, it is advisable to offer to pay a commission to a . . . broker who is instrumental in obtaining any proposal, the commission shall be specified in the resolution.''

It seems to be appellant's position that the effect of the resolution was that the board was offering to pay a commission to a broker who was instrumental in obtaining the highest written proposal, and that since appellant was such broker he was entitled to a commission on the written proposal submitted by him. Stated in another way, his position seems to be that his transaction with the board, including the president's request, the board's resolution, and the appellant's obtaining the highest written proposal, amounted to a contract whereby the board would pay him the reasonable value of his services in obtaining the highest written proposal. It is true that the first sentence (of said section 16057), upon which appellant bases his argument, does give the board discretionary power to pay a commission to a broker; but it is to be noted that that sentence is followed immediately by a sentence which qualifies or limits that discretionary power. That second sentence provides: ''No commission shall be paid unless there is contained in or with the sealed proposal or stated in or with the oral bid, which is finally accepted, the name of the licensed real estate broker to whom it is to be paid, and the amount or rate thereof.'' The sealed or written proposal herein (made by appellant) did contain the name of a broker to whom a commission was to be paid and the amount thereof, but that proposal was not finally accepted. The highest oral proposal herein (by Mr. Hamlin acting for himself - without a broker), which proposal was finally accepted, did not contain the name of a broker or an amount of commission. It appears therefore that the factual situation herein comes within circumstances under which, as stated in said section, no commission shall be paid. Appellant asserts that the words ''which is finally accepted,'' appearing in said section, pertain only to oral bids; and that since those

234

words do not pertain to a sealed or written bid, a commission was payable upon the amount of his written bid even though it was not accepted. The context and punctuation of the section indicate that those words pertain to both kinds of bids, written and oral. There is no implied provision in said section 16057 allowing a commission when the successful bidder is not represented by a broker.

■ Section 16062 of the Education Code provides for apportionment of commission between a broker who submits the highest written proposal and a broker, if any, who represents the successful oral bidder. That section provides: "In the event of a sale on a higher oral bid to a purchaser procured by a licensed real estate broker, other than the broker who submitted the highest written proposal, and who is qualified as provided in section 16057 of this code, the board shall allow a commission on the full amount for which the sale is confirmed. One-half of the commission on the amount of the highest written proposal shall be paid to the broker who submitted it, and the balance of the commission on the purchase price to the broker who procured the purchaser to whom the sale was confirmed." In the present case, since the successful oral bidder was not represented by a broker, the provisions of said section 16062, regarding apportionment of commission, are not applicable.

■ A public school district is a public entity with limited powers. ■ "A board of school trustees is an administrative agency created by statute and invested only with the powers expressly conferred by the Legislature [citation] and cannot exceed the powers granted to them." (*Paterson* v. *Board of Trustees*, 157 Cal.App.2d 811, 818 [321 P.2d 825].) ■ "Where the statute prescribes the only mode by which the power to contract shall be exercised the *mode* is the *measure* of the power." (*Reams* v. *Cooley*, 171 Cal. 150, 154 [152 P. 293, Ann. Cas. 1917A 1260].) Section 16051 of the Education Code provides: "The governing board of any school district may sell . . . any real property belonging to the school district which is not . . . needed by the district . . . *The sale . . . shall be made in the manner provided by this article* [2]. . . ." (Italics added.) The mode or method to be followed in selling the property was specified by statute. ■ The board was required to give notice of the sale in a specified manner, and was required to receive and consider sealed bids, and then to call for oral bids and to accept the highest net bid of a responsible person, unless it rejected all bids. (Ed. Code, §§ 16058, 16056, 16061, and 16060.)

Mr. Hamlin's oral bid of $225,000 was a net bid of that amount, since he was not represented by a broker. If he had been represented by a broker, his net bid would have been 5 per cent less than $225,000 or $213,750. Appellant's bid of $221,000 was a net bid of $209,950. As the matter stood at the close of the bidding (with no broker representing Mr. Hamlin), the high net bid of Mr. Hamlin was $15,050 more than the net bid of appellant, and of course was the highest oral net bid. The board, acting in the best interests of the public and pursuant to statutory provisions, was required to accept the bid of Mr. Hamlin instead of appellant's bid. Since Mr. Hamlin was not represented by a broker, no commission was payable on the sale to him and there was no commission to apportion between brokers as provided in said section 16062. Under the provisions of said sections 16057 and 16062 the board was prohibited from paying a commission to appellant.

It is apparent that appellant was familiar with the procedure for the sale of real property by a school district. It is reasonable to assume that he saw the resolution regarding the sale. The bid form which was sent by the assistant superintendent to plaintiff (the client of appellant) contained the substance of the resolution. The form letter which was sent to plaintiff by the assistant superintendent included information, as above shown, regarding procedure for such a sale. In a letter of July 23, 1959, from plaintiff to a prospective purchaser (a copy of which letter is in the clerk's transcript), plaintiff made statements regarding the procedure "Under the State law for the Board of Education to sell the property," which statements referred to sealed bids and oral bids. The trial court found that plaintiff was fully informed and aware that the property could only be sold by the district pursuant to the requirements of competitive bidding and after publication of notice of intention to sell.

The transaction which appellant had with the board did not amount to a contract whereby the board would pay him the reasonable value of his services.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 11, 1963. Schauer, J., was of the opinion that the petition should be granted.