[Civ. No. 35000. Second Dist. Div. Five. Mar. 25, 1970.]

SANTA MONICA UNIFIED SCHOOL DISTRICT,
Plaintiff, Cross-defendant and Appellant, v.
MAX PERSH et al., Defendants, Cross-complainants and Respondents.

946

## Counsel

John D. Maharg, County Counsel, William L. Owen, S. Robert Ambrose, Deputy County Counsel, for Plaintiff, Cross-defendant and Appellant.

Miller, Jacobs & Kabrins and Milton Louis Miller for Defendants, Cross-complainants and Respondents.

## Opinion

STEPHENS, J.—Plaintiff and cross-defendant Santa Monica Unified School District (hereinafter, the District) appeals from a judgment and decree of specific performance requiring the District to purchase certain property in the Malibu area of Los Angeles County from defendants and cross-complainants (hereinafter, defendants) for the sum of $345,000.

Mr. John Shay, supervisor of building planning for the District, commenced to look for potential sites for a junior high school following the passing of a school bond issue in June of 1966. In December 1966, defendants' real estate agent contacted Mr. Shay concerning the Malibu property, and negotiations for its acquisition ensued. On January 9, 1967, the District's governing board passed a formal *resolution of necessity,* pursuant to Code of Civil Procedure section 1241, authorizing the Los Angeles County Counsel's office to initiate condemnation action of the property.

On January 13, 1967, Mr. Shay, on behalf of the District, and defendants signed an Offer to Purchase Real Estate and Deposit Receipt Agreement. The purchase price was $445,000, and the agreement was subject to the following contingencies: (1) "Appraisals of the property must be $445,000 or more"; (2) "Acceptable geology report"; (3) "Acceptable survey of property"; (4) "Regional Planning Commission approval of this site"; (5) "County Health Department approval of planned disposal operation"; (6) "Water Company assurance of adequate water supply"; (7) "Approval of title search"; (8) "Approval of site by State Department of Education and other govt. agencies." None of these contingencies occurred. An escrow agreement providing for purchase of the property at the same price and containing the same contingencies was prepared the same day. This escrow agreement was signed by Mr. H. M. Nichols, deputy superintendent of the District, but was not signed by any representative of defendants. On March 8, 1967, Mr. Nichols signed an amendment to the escrow agreement, which eliminated the contingencies and reduced the purchase price to $345,000. No representative of the defendants signed this amendment. The District's governing board passed a formal resolution on May 22, 1967, authorizing the Los Angeles County Counsel to make offers to defendants for the purchase of the property. On May 29, 1967, the District filed an action in eminent domain to condemn defendants' property, and recorded a *lis pendens*. The complaint was never served upon defendants. On June 1, 1967, Mr. Shay sent the following letter to defendant Persh, a co-owner of the Malibu property:

> "Dear Mr. Persh:
>
> Enclosed you will find a thermofax copy of a letter directed to the District by the Office of the County Counsel concerning the condemnation procedure on the property desired by the school district as a junior high school site on Rambla Pacifico.
>
> Although this action has been formally taken, it is still possible for you to accept the offer of the Santa Monica Unified School District of $345,000.00 and complete the transaction without the involvement and inconvenience of legal action.
>
> I am hoping that you will favorably consider the District's offer, and would like to state that the District is willing to go into escrow at your convenience.
>
> Very truly yours,
>
> John F. Shay, Supervisor
> Building Planning"

(The trial court found that this letter constituted an offer to purchase

defendants' property.) In the five weeks following receipt of this letter, defendant Persh made oral counteroffers of $445,000, $385,000, and $365,000 to the Los Angeles County Counsel's office. The offer of $365,000 was communicated to the District's board, and rejected. Defendant Persh testified that prior to July 6, 1967, he had a telephone conversation with Mr. Krichman of the county counsel's office, who told him that the District's governing board had rejected the offer of $365,000, but he could still get $345,000 for the property. On July 6, 1967, defendant Persh had a telephone conversation with Mr. Nichols. Mr. Persh advised Mr. Nichols that he wished to accept the letter-offer of June 1, 1967. Mr. Nichols said, "Fine," and told him to send a letter of acceptance to Mr. Shay immediately so that the latter could show it to the District's board. On the same day, defendant Persh sent the following letter to Mr. Shay:

> "Dear Mr. Shay:
>
> I am in receipt of your letter of June 1, 1967 concerning our property on Rambla Pacifico which the school district desires as a junior high school site.
>
> I am enclosing herein a copy of a supplemental report given me by Title Insurance and Trust Company showing your action in the Superior Court on May 26, 1967, case no. 910641, to condemn fee title on all of Said land.
>
> In order to avoid lengthy·involvement and the inconvenience of legal action, my co-owners have authorized me to accept the District's condemnation offer of $345,000.00, and to enter into an escrow at the earliest convenience.
>
> Very truly yours,
> Max Persh"

(The trial court found that this letter constituted an acceptance of the District's offer, and was made within a reasonable time.)

Defendant Persh was advised by his accountant that pursuant to Internal Revenue Code section 1033(a), approximately $20,000 in taxes could be saved if he purchased property similar to that in the process of condemnation within one year of the imminence of condemnation. Mr. Persh thereupon purchased three similar parcels of property in Oklahoma, and paid for them by executing three promissory notes, one dated February 8 and two dated May 2, 1967. Each note was secured by a deed of trust on his share of the Malibu property sale. By executing the promissory notes, Mr. Persh incurred a total indebtedness of over $56,000. He assumed that the notes would be paid out of the money received when the Malibu property was condemned. Moreover, anticipating a cash sale of the Malibu property,

defendants did not pay their real property tax on the land for the fiscal year 1966-1967, which was due in April 1967.

From January 1967 until August 1967, a "sold" sign was placed upon the property, and defendants made no attempt to sell the property to any party other than the District during that period.

On August 1, 1967, the District's board passed a resolution abandoning the eminent domain proceedings. On August 3, 1967, defendants filed an answer to the District's complaint in eminent domain, together with a cross-complaint for specific performance and damages. On August 17, 1967, the Los Angeles County Counsel served notice of the abandonment of condemnation proceedings, and defendants sought to set aside the abandonment, pursuant to Code of Civil Procedure, section 1255a, subdivision (b).[1] The abandonment was upheld at the hearing on defendants' motion, and a judgment of dismissal was entered pursuant to Code of Civil Procedure section 1255a, subdivision (a).

Trial on defendants' cross-complaint for specific performance commenced on September 12, 1968. The trial court found that the District had authorized the contract for purchase of the real property, and had authorized, ratified and approved the acts of Messrs. Shay and Nichols by formal resolutions passed January 9 and May 22, 1967, and by instructions given in executive sessions of the District's governing board. The court concluded that the contract had been approved and ratified by the District through its board, and that the requirements of the Education Code[2] had been fulfilled, thereby making the contract enforceable against the District.

---

[1] Code of Civil Procedure section 1255a, subdivision (b) provides: "The court may, upon motion made within 30 days after such abandonment, set aside the abandonment if it determines that the position of the moving party has been substantially changed to his detriment in justifiable reliance upon the proceeding and such party cannot be restored to substantially the same position as if the proceeding had not been commenced."

[2] The relevant sections of the Education Code provide: Section 921: "Every school district shall be under the control of a board of school trustees or a board of education."

Section 966: "Except as provided in Section 54957 of the Government Code or in Section 967, all meetings of the governing board of any school district shall be open to the public, and all actions authorized or required by law of the governing board shall be taken at such meetings and shall be subject to the following requirements:

(a) Minutes must be taken at all such meetings, recording all actions taken by the governing board. Such minutes shall constitute public records, and shall be available to the public. Until the governing board adopts such minutes as the official minutes, such minutes shall be labeled the unadopted minutes. The official minutes shall also constitute public records and shall be available to the public.

(b) A list of items that will constitute the agenda for all regular meetings shall be posted at a place where parents and teachers may view the same at least 48

On appeal, the District contends: (1) there is no contract because defendant Persh's counteroffers constituted rejections of the District's offer; and (2) if there is a contract it is unenforceable because it was never approved or ratified by the District's board.

As authority for its contention that a counteroffer by an offeree constitutes a rejection of the original offer and terminates the offeree's power to accept the original offer, the District cites *People* v. *Twedt,* 1 Cal.2d 392, 397 [35 P.2d 324]; *Fugate* v. *Cook,* 236 Cal.App.2d 700, 704 [46 Cal. Rptr. 291]; *Niles* v. *Hancock,* 140 Cal. 157 [73 P. 840]; and Rest., Contracts, §§ 37, 38. However, in the instant case Mr. Nichols indicated, subsequent to the oral counteroffers, that the original offer could still be acted upon by acceptance. Defendant Persh then immediately sent his letter of acceptance. ■ "No one doubts that one who has made an offer can

hours prior to the time of said regular meeting, and, in the case of special meetings, at least 24 hours prior to said special meeting."

Section 1001: "The governing board of any school district may execute any powers delegated by law to it or to the district of which it is the governing board, and shall discharge any duty imposed by law upon it or upon the district of which it is the governing board."

Section 1002.5: "Every official action taken by the governing board of every school district shall be affirmed by a formal vote of the members of the board, and the governing board of every school district shall keep minutes of its meetings, and shall maintain a journal of its proceedings in which shall be recorded every official act taken."

Section 1041: "The governing board of any school district may select and acquire sites within the boundaries of the district, and may acquire or construct thereon school facilities, as provided by law."

Section 15002: "The governing board of any school district may, and when so directed by a vote of the voters within the district shall, purchase or improve school lands."

Section 15961: "Wherever in this code the power to contract is invested in the governing board of the school district or any member thereof, such power may by a majority vote of the board be delegated to its district superintendent, *or to such person as he may designate,* or if there be no *district superintendent* then to such other officer or employee of the district as the board may designate. Such delegation of power may be limited as to time, money or subject matter or may be a blanket authorization in advance of its exercise, all as the governing board may direct; provided, however, that *no contract made pursuant to such delegation and authorization shall be valid or constitute an enforceable obligation against the district unless and until the same shall have been approved or ratified by the governing board,·said approval or ratification to be evidenced by a motion of said board duly passed and adopted.* The school district official invested by the governing board with such power of contract shall be personally liable to the school district employing him for any and all moneys of said district paid out on any contracts made in violation or disregard of any provision of this section, but may insure himself against such liability with any insurance company authorized to do business in this state, and the cost of such insurance in whole or in part may be made a proper charge against school district funds, in the discretion of the governing board." (The italics in the first quoted sentence of section 15961 indicate November 13, 1968, amendments. Italics thereafter in the quoted section are supplied for emphasis.)

disregard or refuse the counter-offer, and by a return communication make his original offer once more fully operative." (1 Corbin on Contracts, § 92.) Mr. Nichols' statement that the offer was still in effect was oral. Nevertheless, the original offer was in writing and, along with Mr. Persh's letter of acceptance, provides a written memorandum of the agreement, which is sufficient to satisfy the requirements of Civil Code section 1624. (*King* v. *Stanley,* 32 Cal.2d 584 [197 P.2d 321]; Witkin, Summary of Cal. Law (1960) Contracts, § 90.)

■ While we find that defendants still had the power to accept the District's offer, we find that there is no substantial evidence that the contract was ratified or approved by the District's board, as required by Education Code sections 1002.5 and 15961. Defendants only presented evidence of two formal resolutions by the District's board relating to defendants' property: a resolution of necessity authorizing the county counsel to initiate a condemnation action,[3] and a resolution authorizing the county counsel to make offers to defendants for the purchase of the property. ■ "A school district acts through a board with powers limited both in scope and by the method of their exercise, and is bound by the action of its board only when the latter acts with respect to a matter within a power conferred and in conformance with required formalities." (*Osborne* v. *Huntington Beach Union High School Dist.,* 2 Cal.App.3d 16, 22 [82 Cal.Rptr. 256]; see also *Reams* v. *Cooley,* 171 Cal. 150, 153 [152 P. 293]; *Lipman* v. *Brisbane Elementary School Dist.,* 55 Cal.2d 224, 231 [11 Cal.Rptr. 97, 359 P.2d 465].) ■ A contract which has not been approved or ratified pursuant to Education Code section 15961 does not comply with the required formalities, and is unenforceable against the District. (*Osborne* v. *Huntington Beach Union High School Dist., supra.*) ■ Persons dealing with a school district are chargeable with notice of limitations on its power to contract. (*Miller* v. *McKinnon,* 20 Cal.2d 83, 89 [124 P.2d 34, 140 A.L.R. 570]; 47 Am.Jur., Schools, § 48.)

Defendants contend that no statute sets forth a particular form or time sequence whereby a board of education must pass the motions which are required to approve or ratify a contract to purchase real estate. ■ However, Education Code section 15961 clearly provides that approval of all contracts must be evidenced by a duly passed motion of the board.

---

[3]It cannot be contended that the resolution of necessity authorizing the condemnation action constituted an approval of the contract by the Board. The commencement of condemnation proceedings does not create a legal obligation on the part of the plaintiff to purchase the property which is the subject of the action. Pursuant to Code of Civil Procedure section 1255a, subdivision (a) in a condemnation suit "[t]he plaintiff may abandon the proceeding at any time after the filing of the complaint and before the expiration of 30 days after final judgment, by serving on defendants and filing in court a written notice of such abandonment. Failure to comply with Section 1251 of this code shall constitute an implied abandonment of the proceeding."

Defendants further contend that the board never delegated its authority to Messrs. Shay and Nichols, but rather contracted directly with defendants and no approval of the contract is therefore necessary. Prior to November 13, 1968, section 15961 prohibited delegation of the power to contract to anyone other than the district superintendent unless there was no such officer. At all times relevant to the instant case, Dr. Alfred Artuso was superintendent of the District. Dr. Artuso was not involved in the offer and acceptance episodes. ■ However, Education Code section 1002.5 requires every official action of a school district to be affirmed by a formal vote of the members of the board. The board could not, as defendants suggest, contravene this requirement by authorizing a contract in executive session. If the cited sections of the Education Code demonstrate anything, they demonstrate a legislative intention that such major decisions of school boards as the purchase of school sites should be open and subject to public scrutiny. (See *Sacramento Newspaper Guild* v. *Sacramento County Board of Supervisors,* 263 Cal.App.2d 41, 49 [69 Cal.Rptr. 480], where the court noted the tendency of public bodies to avoid the requirements of such statutes as Education Code section 966 through such devices as executive sessions, thereby promoting secrecy in public affairs.)

■ Although defendant Persh has undeniably suffered hardship, the doctrine of estoppel is not available to him. He actually obligated himself on the three promissory notes involved in the purchase of the Oklahoma property prior to his acceptance of any contract to purchase the Malibu property. Moreover, the principle of estoppel is not applicable to a municipal agency which has not acted in compliance with a statute which is the measure of its power. (*Miller* v. *McKinnon,* 20 Cal.2d 83, 90 [124 P.2d 34, 140 A.L.R. 570].) In *Reams* v. *Cooley, supra,* 171 Cal. 150, a case where a contractor sought to recover in *quantum meruit* for labor and materials furnished to a school district on a contract let in violation of a statute requiring competitive bids, the court said (at pp. 153-154): ". . . But while the doctrine of implied liability applies where general power to contract on a subject exists and the form or manner of doing so is not expressly provided by charter or statute, the decided weight of authority is to the effect that when by statute the power of the board or municipality to make a contract is limited to a certain prescribed method of doing so and any other method of doing it is expressly or impliedly prohibited, no implied liability can arise for benefits received under a contract made in violation of the particular prescribed statutory mode. Under such circumstances the express contract attempted to be made is not invalid merely by reason of some irregularity or some invalidity in the exercise of a general power to contract, but the contract is void because the statute prescribes the only method in which a valid contract can be made, and the adoption of the prescribed mode is a jurisdictional prerequisite to the exercise of the power

to contract at all and can be exercised in no other manner so as to incur any liability on the part of the municipality. Where the statute prescribes the only mode by which the power to contract shall be exercised the *mode* is the *measure* of the power. A contract made otherwise than as so prescribed is not binding or obligatory as a contract and the doctrine of implied liability has no application in such cases." See also, *Merco Constr. Engineers, Inc.* v. *Los Angeles Unified School Dist.,* 274 Cal.App.2d 154, 160 [72 Cal.Rptr. 23].

The judgment is reversed.

Kaus, P. J., and Reppy, J., concurred.

A petition for a rehearing was denied April 21, 1970, and respondents' petition for a hearing by the Supreme Court was denied May 21, 1970.