[No. H003472. Sixth Dist. Dec. 19, 1988.]

MARILYN FLEICE, Plaintiff and Appellant, v.
CHUALAR UNION ELEMENTARY SCHOOL DISTRICT et al.,
Defendants and Respondents.

COUNSEL

Lawrence E. Biegel and Cominos & Biegel for Plaintiff and Appellant.

Ralph R. Kuchler, County Counsel, and Leroy W. Blankenship, Deputy County Counsel, for Defendants and Respondents.

OPINION

**BRAUER, J.**—Respondent Chualar Union Elementary School District (District) erroneously classified appellant Marilyn Fleice as a permanent (tenured) employee after only one year of probationary service. After discovering its mistake, the District reclassified her as probationary and later decided not to rehire her for the next school year. The superior court denied Fleice's petition for a writ of mandate to compel the District to rehire her as a permanent employee. Fleice appeals from the judgment, which we affirm.

### FACTS AND PROCEDURAL HISTORY

Fleice began to teach at Chualar Union Elementary, the District's only school, during the spring 1985 semester. The position opened late in the school year because another teacher had resigned. Apparently satisfied with her service, the District rehired her for the next school year (1985-1986).

In March of 1986, near the end of Fleice's first full year as a teacher,[1] the District offered to rehire her for the 1986-1987 school year as a permanent employee. Fleice accepted the District's offer and signed a contract reflecting the tenured classification.

A new superintendent, Richard Jukes, took office at the beginning of the 1986-1987 school year. Jukes decided that Fleice was not entitled to tenure because she had not yet served the two full years required in Education

---

[1] Fleice's work in spring 1985 did not count as a full year of probationary service. (Ed. Code, § 44908.)

Code section 44882, subdivision (b). To correct the mistake, Jukes informed Fleice in a letter that tenure had been erroneously granted and that she had been reclassified as a second-year probationary employee. Fleice served the remainder of her second full year with satisfactory evaluations. ██ ██
██ The District, however, decided not to rehire her for the next school year.[2]

Fleice petitioned the superior court for a writ of mandate compelling the District to rehire her as a permanent employee. The District opposed the petition on the ground that its purported grant of tenure had been erroneous and properly revoked. The superior court agreed with the District and denied Fleice's petition.

## DISCUSSION

On appeal Fleice contends: (1) that the Education Code permitted the District to grant early tenure and (2) that equitable estoppel prevents the District from revoking its purported grant.

### A. *The Education Code*

██ This, in summary, is Fleice's argument that the Education Code authorizes early tenure: the applicable tenure statute (Ed. Code, § 44882, subd. (b)) makes tenure automatic at the end of two years but does not expressly prohibit earlier tenure. Another section of the code allows local school districts to act in any manner not in conflict with state law. (Ed. Code, § 35160.) Read together, these statutes validate the District's action. We reject Fleice's argument because it appears that the Legislature intended the statutory probationary period to be mandatory.

We first set out the relevant statutes. The tenure statute applicable to this case[3] provided as follows: "Every employee of a school district of any type or class having an average daily attendance of 250 or more who, after having been employed by the district for two complete consecutive school years in a position or positions requiring certification qualifications, is re-elected for the next succeeding school year to a position requiring certification qualifications shall, at the commencement of the succeeding

---

[2] The Education Code does not give probationary teachers the right to be rehired. Thus, although a midyear dismissal requires cause (see Ed. Code, § 44948.3), a decision not to rehire does not. (*Grimsley* v. *Board of Trustees* (1987) 189 Cal.App.3d 1440, 1449-1452 [235 Cal.Rptr. 85].)

[3] Education Code section 44882 was repealed in 1987. The former section's language is now contained in Education Code section 44929.21 (added by Stats. 1987, ch. 1452, § 380).

school year be classified as and become a permanent employee of the district." (Ed. Code, § 44882, subd. (b).)

Education Code section 35160, which gives local school boards autonomy in areas not preempted by state law, provides: "On and after January 1, 1976, the governing board of any school district may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established."

In the light of section 35160, the local control statute, the question we must answer is whether a school board's decision to grant tenure after only one year conflicts with section 44882, the tenure statute. We believe that early tenure would conflict with the tenure statute and is, thus, beyond a school board's power.

We accept for the sake of argument Fleice's assertion that the tenure statute does not literally prohibit early tenure. The statute says only that a teacher who has been employed for two complete years "shall" become permanent; the statute does not say that a teacher shall not become permanent at an earlier time. (Ed. Code, § 44882, subd. (b).) But this easy observation does not conclude the interpretive task. At the time the Legislature enacted the tenure statute there was no local control statute. Since local school boards construed their powers narrowly, the language of section 44882 was well chosen to create a mandatory probationary period. There was no need to add a prohibition against early tenure because no school board would have assumed it had such a power.

The history of the relevant statutes is not very helpful. The tenure statute, section 44882, is substantially similar to a statute first enacted in 1931,[4] more than four decades before the Legislature ever had occasion to consider the ramifications of local control.[5] The language of the local control statute

---

[4] School Code section 5.500 provided: "Every employee of a school district of any type or class, who after having been employed by the district for three complete consecutive school years in a position, or positions, requiring certification qualifications, is reelected for the next succeeding school year to a position requiring certification qualifications shall, except as hereinafter otherwise provided, at the commencement of said succeeding school year, be classified as and shall become a permanent employee of the district." (Stats. 1931, ch. 657, § 4, p. 1394.)

[5] A long succession of tenure statutes indicates, at most, that the Legislature thought the probationary period important enough to require frequent reworking.

Beginning in 1911 the Political Code provided for the automatic reelection of teachers from year to year. (Pol. Code, § 1617, as amended by Stats. 1911, ch. 703, § 1.) A 1921 amendment authorized but did not require tenure for teachers who had been "successfully employed" for two consecutive years. (Pol. Code, § 1609, as amended by Stats. 1921, ch. 878,

comes directly from the constitutional amendment that authorized it, approved by the electorate in 1972. The ballot arguments for and against the amendment do not even touch upon the subject of tenure. Indeed, the arguments are remarkably general; they do not suggest a single, specific change in the state's educational system that might come about as a result of the amendment.[6] The focus of the ballot arguments, if there was one, seems to have been on flexibility in programs. (Cf. Ed. Code, § 35160.1.)

Fleice places much emphasis on a small part of the preamble to the Hughes-Hart Education Reform Act of 1983, in which the precise language of the current tenure statute was adopted. According to the preamble, one of the act's purposes was to "[m]aintain orderly and efficient school campuses which encourage positive attitudes among students and *high morale and high quality teaching from teachers.*" (Stats. 1983, ch. 498, § 2, p. 2034, italics added.) Based upon this language, and the obvious point that tenure was created to benefit teachers, Fleice argues in effect that any ambiguity in the tenure statutes should be resolved in favor of broader tenure rights.

But tenure statutes, like all statutes, reflect a balance of interests. In *Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818 [129 Cal.Rptr. 443, 548 P.2d 1115], the Supreme Court identified the competing interests that this state's tenure statutes have sought to balance. ■ The court wrote: "In considering the student's need for education, the teacher's need for job security, and the school board's need for flexibility in evaluating and hiring employees who may may remain 40 years, the Legislature may determine whether a teacher's vested right shall be granted, postponed or denied.

---

§ 1.) In 1927 the probationary period became two or three years, at the district's option. (Pol. Code, § 1609, as amended by Stats. 1927, ch. 875, § 1.)

The 1929 School Code made tenure mandatory. (Sch. Code, § 5.500, Stats. 1929, ch. 23.) A 1931 amendment introduced a uniform three-year probationary period. (Sch. Code, § 5.500, Stats. 1931, ch. 657, § 4.) In 1941 the Legislature gave larger districts the option to grant tenure after two years. (Sch. Code, § 5.500, Stats. 1941, ch. 558, § 1.)

The 1943 Education Code initially made no change in the required term of probationary service. (Ed. Code, §§ 13081 to 13085, Stats. 1943, ch. 71; recodified in 1959 as Ed. Code, §§ 13303 to 13304 and §§ 13306 to 13308, Stats. 1959, ch. 2, amended by Stats. 1961, ch. 1778, § 2.) The normal, three-year probationary term persisted (Ed. Code, § 44882, Stats. 1976, ch. 1010, § 2) until 1983, when the Legislature shortened the term to two years for teachers whose service began during or after the 1983-84 fiscal year. (Ed. Code, § 44882, as amended by Stats. 1983, ch. 498, § 46, repealed and reenacted as Ed. Code, § 44929.21, Stats. 1987, ch. 1452, § 380.)

[6]These arguments are characteristic. For: "We shouldn't try to fit all four million children in California's public schools into one mold superimposed from the State Capitol." Against: "This proposal places in the State Constitution open-end provisions to give more than 1,156 operating school district boards what amounts to a blank check and free hand to institute new and experimental programs, even though those programs may be only remotely related to legitimate educational needs." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 7, 1972) pp. 14-15.)

[Citation omitted.] Our school system is established not to provide jobs for teachers but rather to educate the young. Establishing a test period for teachers to prove themselves is essential to a good education system." (*Id.* at p. 825.) ■■ Returning to the legislative preamble in light of *Turner,* one might observe that the tenure statute reveals an instance of tension between the goals of "high morale" and "high quality teaching": while mandatory tenure helps to preserve high morale, mandatory probation helps to ensure quality teaching.

The court in *Turner* was not addressing the availability of early tenure,[7] but its statement about the underlying policies affects this case. If the tenure statute does reflect a legislative decision to "[e]stablish[ ] a test period for teachers to prove themselves" (16 Cal.3d at p. 825), school boards must respect that decision even under the local control statute.

Two other sections of the present-day Education Code shed a bright light on our problem. In these other sections, the Legislature has literally described section 44882's probationary period as "required." The first of these, section 44914, gives credit toward the probationary period to substitute teachers who, after teaching more than 75 percent of the regular school year, are rehired as probationary teachers. Under section 44914, a school board "may count the year of employment as a substitute . . . as one year of *the probationary period which he [or she] is required by law to serve as a condition to being classified as a permanent employee* of the district." (Ed. Code, § 44914, italics added.)

The second of these provisions, section 44903, gives credit toward the probationary period to teachers whose small districts (where tenure is not mandatory) have consolidated with larger districts (where it is mandatory). Section 44903 provides that *"the regular three-year[8] probationary period required of certificated employees for permanent status by Section 44882* shall be deemed to have commenced at the begining of the employee's first complete year of consecutive employment by the [smaller] school district . . . ."* (Ed. Code, § 44903, italics added.) The Legislature added the phrase "required of certificated employees for permanent status by Section 44882" in 1978, two years after enacting the local control statute. (Ed. Code, § 44903, amended by Stats. 1978, ch. 1171, § 1, p. 3782.)

---

[7] *Turner* involved the standard of review applicable to a school board's decision not to rehire a probationary teacher.

[8] The reference to a three-year probationary period became anachronistic in 1983, when the Legislature shortened it to two. (Ed. Code, § 44882, as amended by Stats. 1983, ch. 498, § 46, repealed and reenacted as Ed. Code, § 44929.21, Stats. 1987, ch. 1452, § 380.)

These additional sections from the Education Code strongly indicate that the Legislature understands as mandatory—literally "required"—the probationary period set out in section 44882. The *Turner* decision shows from a policy perspective why this should be. Accordingly, the District's purported grant of tenure conflicted with section 44882, subdivision (b), and was thus invalid.[9]

## B. *Equitable Estoppel*

█ Fleice next contends that the District is equitably estopped to revoke its purported grant of tenure. But our holding that the District acted beyond its statutory power in granting tenure leaves no room to apply the estoppel doctrine.

█ To be sure, " '[t]he doctrine of equitable estoppel may be applied against the government where justice and right require it.' " (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493 [91 Cal.Rptr. 23, 476 P.2d 423], quoting from *U. S. Fid. & Guar. Co.* v. *State Bd. of Equal.* (1956) 47 Cal.2d 384, 388-389 [303 P.2d 1034].) This general principle, however, has two important qualifications. The first is "the well-established proposition that an estoppel will not be applied against the government if to do so would effectively nullify 'a strong rule of policy, adopted for the benefit of the public . . . .' " (*City of Long Beach* v. *Mansell, supra,* 3 Cal.3d at p. 493, quoting from *County of San Diego* v. *Cal. Water Etc. Co.* (1947) 30 Cal.2d 817, 829-830 [186 P.2d 124, 175 A.L.R. 747].) The second qualification is the rule that estoppel cannot expand a public agency's powers. Thus, principles of estoppel are not invoked to contravene statutes and constitutional provisions that define an agency's powers. (*Longshore* v. *County of Ventura* (1979) 25 Cal.3d 14, 28 [157 Cal.Rptr. 706, 598 P.2d 866]; *El Camino Community College Dist.* v. *Superior Court* (1985) 173 Cal.App.3d 606, 617 [219 Cal.Rptr. 236].)

█ Both qualifications apply here. The tenure statute, as already discussed, limits the District's powers by establishing a mandatory two-year probationary period. The probationary period itself serves the strong policy articulated in *Turner*: "[e]stablishing a test period for teachers to prove themselves is *essential* to a good education system." (*Turner* v. *Board of Trustees, supra,* 16 Cal.3d 818, 825, italics added.) Thus, even if the

---

[9] Fleice also argues that the District, by revoking the purported grant of tenure, "took back due process rights previously granted." She is referring to the rights set out in Education Code sections 44932 and 44933, which provide that a permanent teacher may only be dismissed for cause. The argument fails because it necessarily assumes that the purported grant of tenure was valid—a conclusion we have rejected.

District's conduct and Fleice's reliance upon it[10] satisfied the estoppel doctrine's prerequisites, the doctrine still would not apply.

Fleice argues that *Crumpler* v. *Board of Administration* (1973) 32 Cal.App.3d 567 [108 Cal.Rptr. 293] justifies a more liberal application of the estoppel doctrine to public agencies. But a close reading of the opinion shows that the court respected the doctrine's limitations. Crumpler, along with the other plaintiffs, had contributed to the Public Employees Retirement System based upon his classification as a "safety" employee. "Safety" employees contribute more and receive greater benefits than "miscellaneous" employees. After 20 years, the retirement system's administrative board determined that Crumpler's classification was incorrect and reclassified him retroactively as a "miscellaneous" employee. The reclassification substantially reduced Crumpler's expected benefits. (*Id.* at pp. 570-574.)

The *Crumpler* court upheld the board's reclassification prospectively but not retroactively. After determining that the board's conduct and Crumpler's reliance upon it met the requirements for an estoppel, the court expressly held that an estoppel would not contravene any statutory limitation on the board's authority. Government Code section 20124 made the board *"the sole judge* of the conditions under which persons may be admitted to and continue to receive benefits under [the] system." (Gov. Code, § 20124; see 32 Cal.App.3d at p. 578, italics added.) This statute led the court to hold that *Crumpler* was "not a case where the governmental agency 'utterly lack[ed] the power to effect that which an estoppel against it would accomplish.'" (*Crumpler, supra,* 32 Cal.App.3d at p. 584.) In other words, either classification—"safety" or "miscellaneous"—had been within the board's power. The estoppel doctrine applied since the plaintiffs had relied to their detriment on a valid governmental act.

In contrast to *Crumpler,* Fleice asks the court to order a public agency to do what it has no statutory power to do. One may well ask whether such an order would be lawful in any event, and how the public agency would comply. The courts' refusal to issue such orders in the past (see *Longshore* v. *County of Ventura, supra,* 25 Cal.3d at p. 28; *El Camino Community College Dist.* v. *Superior Court, supra,* 173 Cal.App.3d at p. 617) respects

---

[10]Because the estoppel doctrine does not apply, we need not determine whether Fleice adequately showed reliance on the purported grant of tenure. We note, however, that her allegations of reliance were not very strong. She alleged that she declined one invitation to interview with another district. She also alleged that she took classes in order to obtain supplementary teaching credentials. But since the District required Fleice to undertake this academic work as a condition to her original, *probationary* employment, since she knew at the outset that she had no right to be rehired for another year, and since she apparently began studying *before* the District erroneously granted tenure, her educational expenses do not constitute reliance on the purported grant.

the division of legislative and judicial power. (See Cal. Const., art. III, § 3.) The common law doctrine of equitable estoppel does not authorize us to rewrite the Education Code.

DISPOSITION

The judgment is affirmed.

Agliano, P. J., and Capaccioli, J., concurred.