TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | No. 92-908 |
| of | : | |
| | : | April 6, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

---

THE HONORABLE WILLIE L. BROWN, JR, SPEAKER OF THE ASSEMBLY, has requested an opinion on the following question:

Pursuant to a multi-year employment agreement, may a school district make a lump-sum payment of money to a retiring certificated superintendent of schools for unused, accumulated sick leave?

CONCLUSION

Pursuant to a multi-year employment agreement, a school district may make a lump-sum payment of money to a retiring certificated superintendent of schools for unused, accumulated sick leave.

ANALYSIS

In this opinion we are asked to examine whether a school district may contract to pay an employee for any unused sick leave that may have accumulated at the time of his or her retirement. In 58 Ops.Cal.Atty.Gen. 146 (1975), we concluded that there was no statutory authority for such payment to a retiring certificated school employee, despite the provisions of then Education Code section 14005[1] (now section 22722) which referred to "[p]ayments for accumulated sick leave . . . paid by separate warrant."[2] We reasoned in our 1975 opinion that former section 14005 "does

---

[1] All statutory references hereafter to the Education Code are by section number only.

[2] Former section 14005 provided:

"Except as provided in Section 14004, no credit toward retirement shall be granted for any payment made for accumulated sick leave upon transfer from one

not actually authorize payments. Only the method of payment is spelled out `by separate warrant.'" (Id., at p. 147.) We did not address whether a cash payment option could be negotiated and incorporated as one of the terms of the employee's contract. We now address that question.

Since issuance of our 1975 opinion, the Legislature has substantially revised the Education Code, granting school districts significant control over their programs and activities. Section 35160 now provides:

"On and after January 1, 1976, the governing board of any school district may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established."

Not only has the Education Code been changed since 1975, we have here a multi-year employment contract containing the payment term. We conclude that pursuant to an employment contract, a lump-sum amount may be paid for unused sick leave at the time of retirement.

A.      Section 35160

Looking first at the changes in the Education Code since 1975, we find that section 35160, formerly section 7503.5, resulted from an amendment of the California Constitution. At the November 7, 1972 General Election, section 14 of article IX of the Constitution was amended by the voters to add the following paragraph:

"The Legislature may authorize the governing boards of all school districts to initiate and carry on any programs, activities, or to otherwise act in any manner which is not in conflict with the laws and purposes for which school districts are established."

In 60 Ops.Cal.Atty.Gen. 206, 208 (1977), we explained the significance of this constitutional change and the enactment of section 35160 as follows:

"The above statute, it may be seen, profoundly alters the analytic focus of a determination of a school district's authority in any given case. In essence, we now must look to whether particular conduct is precluded, where previously we searched for express or implied authorization for such conduct."

We had previously observed that no longer were we to follow "the strict rule enunciated by the courts that school districts are public agencies with extremely limited powers . . . ." (60 Ops.Cal.Atty.Gen. 177, 180 (1977).)

_____

district to another, upon termination of service, upon death, or retirement. No contributions shall be taken from such payments. Payments for accumulated sick leave shall not be included in any payroll warrant paid the teacher but shall be paid by separate warrant. Such payments shall not be included in the computation for the purposes of determining `final compensation.' No continued leave of absence shall be granted a member solely for the purpose of allowing the member to receive compensation for accumulated sick leave for which the member could otherwise have elected to receive payment."

Since the enactment of section 35160, we have examined its grant of authority in a variety of contexts. (See, e.g., 65 Ops.Cal.Atty.Gen. 326, 327 (1982) [school board may grant exclusive photography contract for school yearbook pictures]; 63 Ops.Cal.Atty.Gen. 851, 853 (1980) [school board may grant repurchase option to seller in school property acquisition contract]; 60 Ops.Cal.Atty.Gen. 206, 208 (1977) [school districts may enter into a joint agreement to hire legal counsel for special services].)

In *Fleice* v. *Chualar Union Elementary School Dist.* (1988) 206 Cal.App.3d 886, the court analyzed the language of section 35160 with respect to whether a school district could grant early tenure to a school employee. In *Johnson* v. *Board of Education* (1986) 179 Cal.App.3d 593, the court sanctioned the actions of a school board in reviewing a superintendent's decision regarding whether to change a student's grade. The court stated regarding section 35160:

"When the Legislature has made clear its intent that a school district may initiate and carry on any program or activity, or otherwise act in a manner not in conflict or inconsistent with the law and not in conflict with the purposes for which a school district is established, we conclude that such categorical leeway cannot be restricted by the courts. The Board of Education, therefore, is empowered with the inherent right and express administrative jurisdiction to create investigative boards or bodies, hold hearings, address grievances and issue and enforce its holdings in so far as they are not in conflict with or inconsistent with any law and which are not in conflict with the purposes for which the school districts are established. The Supreme Court acknowledged this change in *Hatzell* v. *Connell* (1984) 35 Cal.3d 899, where at page 915 it noted: `Prior to the effective date of section 35160, local school districts possessed little, if any, power to act without express legislative or administrative authorization. [Citation.] Section 35160 provides local districts with more flexibility.' The court goes on to note that it was the view of the legislative counsel that the Legislature would not have to grant specific authority for a school board to carry out a particular activity but could authorize school boards to carry out any activity if it was related to school purposes and not prohibited by law." (Id., at pp. 600-601.)

In 1987 the Legislature enacted section 35160.1 (Stats. 1987, Ch. 1452, § 199) to further clarify the broad grant of authority contained in section 35160. Section 35160.1 provides:

"(a) The Legislature finds and declares that school districts, county boards of education, and county superintendents of schools have diverse needs unique to their individual communities and programs. Moreover, in addressing their needs, common as well as unique, school districts, county boards of education, and county superintendents of schools should have the flexibility to create their own unique solutions.

"(b) In enacting Section 35160, it is the intent of the Legislature to give school districts, county boards of education, and county superintendents of schools broad authority to carry on activities and programs, including the expenditure of funds for programs and activities which, in determination of the governing board of the school district, the county board of education, or the county superintendent of schools are necessary or desirable in meeting their needs and are not inconsistent with the purposes for which the funds were appropriated. It is the intent of the Legislature that Section 35160 be liberally construed to effect this objective.

"(c)  The Legislature further declares that the adoption of this section is a clarification of existing law under Section 35160."

Not only is section 35160 to "be liberally construed" (§ 35160.1, subd. (b)), but as part of the legislation enacting section 35160.1, the Legislature declared:

"The Legislature finds and declares that, in 1972, the people of the state adopted an amendment to Section 14 of Article IX of the California Constitution, which permits the Legislature to authorize the governing boards of school districts to initiate and carry on any programs, activities, or to otherwise act in any manner which is not in conflict with the laws and purposes for which school districts are established.

"It is the intent of the Legislature, in enacting this act, to implement more fully, for the school districts, county boards of education, and the county offices of education in California, the intent of the people in adopting the amendment of Section 14 of Article IX of the California Constitution. The Legislature further finds and declares that, in order to do so, it is necessary to amend or repeal many provisions of the Education Code.

"Whenever in this act a power, authorization, or duty of a school district governing board, county board of education, or county office of education, is repealed or otherwise deleted by amendment, it is not the intent of the Legislature to prohibit the board or office from acting as prescribed by the deleted provisions. Rather, it is the intent of the Legislature, that the school district governing boards, county boards of education, and county superintendents of schools, respectively, shall have the power, in the absence of other legislation, to so act under the general authority of Section 35160 of the Education Code."  (Stats. 1987, ch. 1452, §1.)

Returning to the question presented herein, we believe the action by a school board in incorporating a payment option for unused sick leave in the terms and conditions of a superintendent's contract would not be "in conflict with the purposes for which school districts are established" and would relate directly to such purposes, the hiring of a highly competent and qualified school administrator.

B.    Section 35031

In determining whether a contractual agreement to pay a lump-sum amount to a school superintendent for accumulated sick leave upon retirement would be "in conflict with or inconsistent with, or preempted by, any law" (§ 35160), we turn to the statutes governing the terms of an employment contract for a school superintendent.

Section 35031 states in part:

"Any district superintendent of schools, or deputy, associate, or assistant superintendent of schools, may be elected for a term of no more than four years.  The governing board of any school district, with the consent of the employee concerned, may at any time terminate, effective on the next succeeding first day of July, the term of employment of, and any contract of employment with, the superintendent of schools, or any associate, deputy, or assistant superintendent of schools of the district, and reelect or reemploy the employee, on those terms and conditions as may be mutually agreed upon by the board and the employee, for a new term to

commence on the effective date of the termination of the existing term of employment. In the event the governing board of a school district determines the superintendent of schools of the district, or deputy, associate, or assistant superintendent of schools, or employee in the senior management of the classified service is not to be reelected or reemployed as such upon the expiration of his or her term, he or she shall be given written notice thereof by the governing board at least 45 days in advance of the expiration of his or her term. In the event the governing board of a district fails to reelect or reemploy the superintendent of schools of the district, or deputy, associate, or assistant superintendent of schools, or employee in the senior management of the classified service as such and the written notice herein provided for has not been given, he or she shall be deemed reelected for a term of the same length as the one completed, and under the same terms and conditions and with the same compensation."

Under section 35031, the terms of an employment contract for a superintendent of schools are broadly defined as "those terms and conditions as may be mutually agreed upon by the board and the employee."[3] It is apparent that including the payment of a lump-sum amount for unused sick leave upon retirement as a term of a superintendent's contract would not be in conflict or inconsistent with or preempted by section 35031. (Compare *California School Employees Assn.* v. *Del Norte County Unified Sch. Dist.* (1992) 2 Cal.App.4th 1396, 1404.)

Turning to other relevant statutes, we note that school superintendents are certificated employees. (§ 35028.) They are also members of the State Teachers Retirement System ("STRS"), and as such would be subject to the STRS laws. (§ 22506.) STRS has no jurisdiction over employment matters, either in imposing or prohibiting particular contract terms. However, certain contract terms may affect the calculations made by STRS in determine an employee's retirement allowance.

Two key factors in calculating a school employee's retirement allowance are: (1) the total number of years of service and (2) the amount of final compensation paid to the individual. (§§ 24000-24005.) Section 22722 generally provides that "no credit toward retirement shall be granted for any payment for accumulated sick leave upon . . . retirement." Section 22114, subdivision (a)(4) excludes from the definition of compensation "[l]ump-sum payments for accumulated sick leave," and section 22722 provides that payments for accumulated sick leave "shall not be included in the computation for the purposes of determining `final compensation.'"

Accordingly, the payment of a lump-sum amount for unused sick leave upon retirement would not be in conflict or inconsistent with or preempted by the STRS laws. Rather, these laws recognize such payments; the Legislature has expressly directed the manner in which the payments are to be treated for retirement allowance purposes.

We know of no other statutory provisions which would preclude a lump-sum payment for unused, accumulated sick leave upon retirement pursuant to the terms of an employment contract. Based upon the contractual obligation, such payments would not violate section 17 of

---

[3]For certificated school employees who were the subject of our 1975 opinion, the Legislature has enacted the Educational Employment Relations Act (Gov. Code, §§ 3540-3549.3). (Stats. 1975, ch. 961, § 2.) This legislative scheme provides collective bargaining rights with respect to various terms and conditions of employment defined to include health and welfare benefits. (Gov. Code, § 3543.2, subd. (a).)

article IV of the Constitution which prohibits payment for "past services." (See *Seymore* v. *Christianson* (1991) 235 Cal.App.3d 1168, 1173.)

We conclude that a school district may pay a lump-sum amount of money to a retiring certificated superintendent of schools for unused, accumulated sick leave pursuant to multi-year employment agreement which provides for such payment.

\* \* \* \* \*